THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
FRANK DONATO, FRANK McNALLY, GEORGE ORMSBY
AND VINCENT O'KEEFE, ALIAS BRASCH, PLAINTIFFS
IN ERROR.

Argued October 15, 1929—Decided February 3, 1930.

For the plaintiffs in error, *William A. Kavanagh*.

For the defendant in error, *John Drewen*, prosecutor of the pleas.

The opinion of the court was delivered by

TRENCHARD, J.   Frank Donato, Frank McNally, George Ormsby and Vincent O'Keefe (hereinafter sometimes referred to as the defendants) were indicted in the Hudson Oyer and Terminer Court for the murder of Catherine McGee, a child of eight years, at Jersey City, on November 6th, 1928.

Donato and O'Keefe were convicted of murder in the second degree and McNally and Ormsby of manslaughter, and were duly sentenced.

They sued out this writ of error and have filed numerous assignments of error and causes for reversal.

The evidence at the trial justified the jury in finding, if they saw fit, the following matters of fact:

At about eight-thirty in the evening of November 6th, 1928, a gang fight occurred on the sidewalk directly in front of Public School No. 2 on Erie street in Jersey City.  Policemen were called there to disperse the fighters and the crowd that had assembled.  There was standing at the time (at the curb nearest the school) an automobile—a Chandler sedan—the front of the car looking toward Fourth street.  There was no other automobile there.  When the fighters were dispersed, four disheveled men—one or two of them holding handkerchiefs to their mouths—were seen to get into this standing automobile hastily; and when they had done so, the car was immediately driven away in the direction of Fourth street, which was about one hundred feet away from where it had been standing.  The events that followed and resulted in the killing of Catherine McGee took place within the space of less than a minute.  The automobile, no one having left it after the four

men had gotten in, was seen to turn east on Fourth street. When the car had gone about twenty-five feet into Fourth street from Erie street, the car was stopped, and at the same time the doors of the car were opened and two or more of its occupants—at least one of them having a handkerchief tied to his mouth—hurried out of it and ran directly to a group of persons who were standing on the sidewalk near the corner of Erie and Fourth streets. As they did so a voice from the car was heard to call out: "Get the fellow with the cap!" In the group on the sidewalk at the time was one Whalen, wearing a cap. He knew none of the defendants and had had no trouble with them. The men leaving the car were each armed with a baseball bat. One of the men ran toward Whalen and upon reaching him raised his bat in the air and struck a violent blow at Whalen. Whalen quickly stepped away to avoid the blow and it glanced from his arm. Catherine McGee happened along at this instant. The baseball bat that glanced from Whalen struck her on the head. It made a "terrible sound;" a "crash." The child fell on her face unconscious. She was taken to the hospital where she died the next morning of a fractured and crushed skull. When the blow had been struck, the car almost immediately started. The assailant, and those who had left the car with him, fled back into it and the car was driven away. After the assault upon the child and while the assailant and his companions were running back toward the car, someone in the car was heard to call out: "Come on, Vince." The men who got into the car after the fight in front of the school were the same men who were in the car when it was stopped on Fourth street. No one had left it and those men were the four defendants.

Such were the outstanding central matters of fact which the jury was legally justified in finding after a consideration of all of the evidence, including the confessions of the several defendants.

The defendants when on trial denied in effect any participation in the killing and offered some evidence which it is contended justified the inference that they were elsewhere.

We now deal with the several points argued by counsel for the defendants.

There was no error in the refusal of the trial court to quash the indictment, as contended by the defendants.

The indictment against the four defendants contained a count for murder in the language stated in section 36 of the Criminal Procedure act (*Comp. Stat., p.* 1832), to be sufficient in an indictment for murder, and a count for manslaughter in language stated in the same section to be sufficient in an indictment for manslaughter. Such an indictment is constitutional and legal (*Graves* v. *State,* 45 *N. J. L.* 203; *affirmed, Ibid* 347; *Titus* v. *State,* 49 *Id.* 36; *Brown* v. *State,* 62 *Id.* 666), and will not be quashed upon an objection, as here, that it did not set forth the manner or the means by which the death of the deceased was caused.

The defendants' motion to quash the indictment was also based upon the fact that the count for murder used the word "his" instead of "their." But the indictment was then amended in that respect. As originally presented it contained in the count for murder the words: "did willfully, feloniously and of *his* malice aforethought kill and murder." The amendment consisted in the change of the word "his" to the word "their," so that the passage was made to read: "did willfully, feloniously and of *their* malice aforethought kill and murder." The defendants then contended, and now contend, that the court had no power to make such amendment. Not so.

The amendment was of a clerical error only. On the face of the indictment a charge of murder could be perceived against all four defendants. The power of amendment applies to a case where, as here, on the face of the indictment, a specific criminal charge can be perceived, which fails to be effective only by reason of an error, which, looking at the charge and averments of the indictment, the court can clearly infer was a clerical error. *State* v. *Kern,* 51 *N. J. L.* 259; *State* v. *Johnson,* 91 *Id.* 611. Such power of amendment was conferred by section 44 of the Criminal Procedure act. *Comp. Stat., p.* 1834.

We think that the challenge to the array, based upon the contention that the struck jury was an illegal jury, was properly overruled.

The struck jury was drawn pursuant to the provisions of chapter 246 of the laws of 1929. The statute reads:

"When a rule for a struck jury shall be entered upon any indictment for murder, the court granting such rule may, upon motion of the prosecutor, or of the defendant, or on its own motion, select from the persons qualified to serve as jurors in and for the county in which any indictment was found, whether the names of such persons appear on the list of jurors prepared and selected by the commissioners of jurors of the persons qualified to serve as jurors in and for such county or not, sixty names, with their places of abode, from which the prosecutor and the defendants shall each strike twelve names in the usual way, and the remaining thirty-six names shall be placed by the sheriff in the box in the presence of the court, and from the names so placed in the box, a jury shall be drawn in the usual way."

Counsel for the defendants contend that there was no notice given of a motion for a struck jury and that no such motion was made. This contention is ill-founded in point of fact. The record discloses that such motion was made on notice and was granted.

It is also contended that this statute, as applied in the present case, was an *ex post facto* law. We think that it was not.

Section 76 of the Criminal Procedure act enacted by chapter 159 of the laws of 1910 (*Comp. Stat., p.* 1845), was amended in 1916 and in 1919. Chapter 246 of the laws of 1929—the statute in question—re-enacts almost literally the provisions of section 76 of the act of 1910 as it existed from 1910 until 1916. Prior to the 1929 act, and since 1919, the law as to struck juries in criminal cases was laid down in chapter 260 of the laws of 1919. The essential change effected by the statute of 1929 is in the method of selecting the list of names from which the jury shall be struck in murder cases. Under the method prescribed by the 1919 act, the jury commis-

s.oners shall draw by lot sixty names from a list previously made and certified by them. From these sixty each side strikes twelve, thus leaving a panel of thirty-six names from which the jury is drawn at the trial. Whereas the statute of 1929 provides that the court granting the rule for a struck jury in a murder case pursuant to section 75 of the Criminal Procedure act, selects "from the persons qualified to serve as jurors in and for the county in which any indictment was found, whether the names of such persons appear on the list of jurors prepared and selected by the commissioners of jurors * * * or not, sixty names," &c. From these sixty names the trial jury is finally obtained exactly as was the case under the act of 1919, and the number of peremptory challenges remains the same, as provided by section 81 of the Criminal Procedure act.

But the defendants said below, and say now, that the act of 1929 "changes the method of regulating peremptory challenges" and therefore is *ex post facto* if applied, as here, to any offense committed six months before the statute took effect. To this the answer is first, that it does not change such method, since it provides, as did the act of 1919, that the "jury shall be drawn in the usual way;" secondly, an *ex post facto* law is one which imposes a punishment for an act which was not punishable when it was committed, or imposes additional punishment, or, changes the rules of evidence by which less or different testimony is sufficient to convict. (12 *C. J.* 1097, § 803, citing many cases from various states including *Moore* v. *The State,* 43 *N. J. L.* 203.) The act of 1929 manifestly does no such thing. The change in the method of selecting the list of names from which the jury should be struck in murder cases did not render the law *ex post facto,* even when applied to a case where the murder is alleged to have been committed before the act took effect. *Brown* v. *State, supra; State* v. *Barker,* 68 *Id.* 19.

The defendants argued below in support of their challenge to the array, and argue here, that the act of 1929 was not effective because it does not repeal the act of 1919, and that, if it does, it thereby deprives them of due process of law.

The first proposition as thus broadly stated is untrue in point of fact. The second is ill-founded in law.

The effect of the 1929 statute is to repeal by necessary implication *the provisions* of the act of 1919 *respecting the method of selecting the names from which the jury shall be struck* "when a rule for a struck jury shall be entered on any indictment for murder," *and provides a substitute therefor.* The two statutes are plainly and absolutely contradictory of each other to that extent. Giving such effect to the act does not deprive the defendants of due process of law. *Brown* v. *State, supra; State* v. *Barker, supra.*

Defendants also contend that the challenge to the array should have been sustained because the present case does not come within the terms of the statute of 1929. We think that the case is within the statute. The statute, by its own terms, shall apply "when a rule for a struck jury shall be entered upon *any indictment for murder.*" That was the situation here. It is contended that because the indictment for murder contained a count for manslaughter and also a count for assault and battery, therefore the statute has no application. No so. There was "an indictment for murder," and two of the defendants were convicted of murder in the second degree and two of manslaughter, and the count for assault and battery was abandoned at the trial.

Defendants further argue that the challenge should have been sustained because, as they contend, the act of 1929 is unconstitutional in that it required that the struck jury should be selected from the persons qualified to serve as jurors in and for the county, and did not in so many words require, as did the act of 1919, that they be selected from such persons as are "most impartial and unbiased" and "best qualified as to talents, knowledge, integrity, firmness and independence." But, as has been pointed out in *State* v. *Barker, supra,* the legislature has full power to prescribe the method by which the panel of jurors shall be selected for the trial of a criminal case, and also to prescribe the qualifications of such jurors, provided that the constitutional requirement of impartiality is not disregarded. It was there held (and we

think rightly) that language similar to that of the act of 1929 did not offend against the constitutional requirement.

We think that there is no merit in the objection to the court's admission in evidence of the confessions made by the defendants to the police at the time of their arrest.

The four defendants made statements which were reduced to writing by the police. The statements were clearly proved to have been voluntary statements and to have been made without any force, threats or promises whatsoever.

The defendants' counsel argues that they were not "confessions." We think they were.

Confessions are admissions, made at any time by a person accused of crime, stating or suggesting the inference that he committed or participated in the commission of that crime. *Underh. Cr. Ev.* (*3d ed.*), § 215. Such are the statements in question. The statements were in writing and were respectively taken down by police officials. Two of the defendants signed the statements and as to those it cannot be seriously contended that they were not admissible in evidence.

But the defendants Donato and O'Keefe, after the statements had been written out by questions and answers, refused to sign them when presented to them for that purpose. No suggestion was then made that the statements were inaccurate in the slightest respect. The undisputed proof at the trial was that they were accurate.

We think there was no error prejudicial to such defendants in their admission in evidence. It is said in 2 *Whart. Cr. Ev.* 1329, that "it is not necessary to the admissibility of a written confession * * * that it should be signed by the accused" (citing *State* v. *Haworth*, 24 *Utah* 398; *State* v. *Eaton*, 3 *Harr.* 554; *State* v. *Johnson*, 5 *Id.* 507). We do not go so far as to adopt that as an unqualified rule. But the undoubted rule is that a confession of the accused which was reduced to writing by another person and was read over to or by the accused, and which was signed or otherwise admitted by him to be correct, is as much his written confession as one prepared entirely by his own hand would be; and when made voluntarily it is admissible against him. 16 *C.*

*J.* 732. And where, as here, a confession of the accused, made voluntarily, which was reduced to writing by another person, but which the defendant refused to sign, when it was presented to him for that purpose, "until he sees his counsel" or "on the advice of counsel," and for no other reason, it was not prejudicial error to admit such written confession, it appearing that the writing was clearly proved, before its admission in evidence, to be entirely accurate, with no evidence—not even a suggestion—that there was any inaccuracy in the writing, although the accused was accorded ample opportunity to make such showing if he could. In this connection it is to be borne in mind that the fundamental object of proof of a confession is to render it trustworthy.

We think there was no error in the action of the trial court in allowing the state to cross-examine Josephine Donato, the wife of one of the defendants. She was called as a witness by, and gave testimony for her husband, one of the defendants, and was therefore subject to proper cross-examination by the state. The cross-examination was in nowise improper.

We think it was not erroneous for the state at the trial to abandon the count for assault and battery.

As we have pointed out the indictment charged both murder and manslaughter in statutory form, with an additional count for assault and battery, and it certainly was not erroneous for the state at the trial to abandon the latter count where, as here, under the evidence, the defendants, if guilty at all, were guilty either of murder or manslaughter. *State* v. *Moynihan,* 93 *N. J. L.* 253.

The defendants seem to contend that the verdict is inconsistent and repugnant and therefore illegal in that two of the defendants were convicted of murder in the second degree and two of manslaughter. The answer is that on an indictment for murder two of the defendants may be convicted of murder in the second degree and two of manslaughter, if the evidence will legally support such verdicts. *Whar. Hom.,* §§ 47, 653.

We have examined with care the various other points of the defendants relating to other alleged errors notably in the admission and rejection of evidence, in the refusal to strike

out evidence, and in the charge of the court and refusals to charge, and we find none which in our judgment could have prejudiced the defendants in maintaining their defense upon the merits. Such alleged errors cannot lead to a reversal.

There was no error in the refusal of the trial judge to direct a verdict of acquittal. The evidence at the trial, if believed by the jury, and the inferences which the jury might lawfully draw therefrom, if they saw fit, justified the conviction of the defendants of the crime charged, and hence required the sub-mission of the case to the jury.

We have examined with care all of the evidence, and as a result of such examination we think that the verdict is not against the weight of the evidence in respect to any of the defendants.

The judgment will be affirmed.

PARKER, J. (dissenting). I concur in the prevailing opinion and in the affirmance of the judgment so far as relates to defendants McNally and Ormsby. With respect to defendants Donato and O'Keefe, I think there was harmful error in admitting into evidence as "confessions" the papers written by police officers, not signed by the respective prisoners and not even specifically admitted by them to be a correct committal to paper of statements alleged to be made by them. As set out in the opinion, each one refused to sign the statement attributed to him. The only theory on which the majority hold them admissible is that the evidence plainly showed that the papers correctly embodied the statements of the defendants, and that the refusal of the latter to sign them was put on the ground that the prisoners wished first to consult counsel. Bearing in mind that each paper was written by an officer of the law, and considering the strictness of the rules relating to confessions, I think this fell far short of the test of authenticating a piece of documentary evidence.

Of course they were available to refresh the memory of the writer; but that is far different from receiving them in evidence as written statements of the prisoners, who on the trial testified that they had not made such statements at all.

I think there should be a reversal as to Donato and O'Keefe.

Justice Campbell and Judges Van Buskirk, McGlennon, Kays and Hetfield authorize me to say that they concur in the foregoing views.

As to McNally and Ormsby:

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, KALISCH, BLACK, CAMPBELL, LLOYD, CASE, BODINE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ.   15.

*For reversal*—None.

As to Donato and O'Keefe:

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, KALISCH, BLACK, LLOYD, CASE, BODINE, DEAR, JJ.   9.

*For reversal*—PARKER, CAMPBELL, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, JJ.   6.