6 N.J. Super. 214 (1950)
70 A.2d 771
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ARTHUR MEOLA, AND OTHERS, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 21, 1949.
Decided January 20, 1950.
*215 Before Judges JACOBS, DONGES and BIGELOW.
Mr. Edward Schoen, Jr., argued the cause for the State (Mr. Duane E. Minard, Jr., Essex County Prosecutor, attorney) (Mr. C. William Caruso, Legal Assistant Prosecutor).
Mr. Charles A. Stanziale argued the cause for appellant Meola (Mr. Alexander Avidan, on the brief).
Mr. Samuel I. Kessler argued the cause for appellants Krubit, Rosenson and Silverman (Messrs. Kessler & Kessler and Mr. Max L. Rosenstein, attorneys).
The opinion of the court was delivered by BIGELOW, J.A.D.
The four appellants were convicted of bookmaking. The evidence was convincing that someone was engaged in bookmaking in the building at 317 Frelinghuysen Avenue, Newark; the question was whether the appellants, or any of them, were the guilty parties.
At the Frelinghuysen Avenue address is a one-story brick building, 34 feet front by 150 feet deep, and beside it an alleyway. The rear of the building, the greater part of it, is used as a garage. The front part consists of three rooms *216 or offices, the main one reached through the front door; a small room, about 8 by 10 feet, to the right of it; and further to the rear, between the front rooms and the garage, is the third. It was in that room that the bookmaking activities took place. The premises were owned by two brothers named Epstein, and were leased by them at $365 a month to the Doehler Food Company, or to William Doehler, trading under that name. Doehler seems also to have been known as Pete Dolus. Arthur Meola, who is one of the defendants, was engaged in the trucking business and was the sub-tenant of the small front office and of space in the garage for his truck. Six police officers raided the building early in the afternoon of Friday, July 2, 1948. They found no one in the office part of the structure, but in the middle room they did find the usual bookmaking paraphernalia, including many memoranda sheets, some bearing the date of the raid. Phones were ringing and messages coming over the wires from patrons eager to place their bets. We might note here that the Telephone Company, on order of Doehler, had installed three instruments with two trunk wires. And for Meola they had put one telephone in his office. The police found another telephone instrument, disconnected, in the drawer of a cabinet in the middle room. They also found in the same room a telephone (of which the Telephone Company had no record) connected with one of the other phones  which one is not clear. Whether messages were received by the police over the Meola phone is also not clear. One of the police officers admitted on cross-examination that he believed fingerprints were taken. Since the State offered no proof in regard to them, we may assume that no fingerprints of the defendants were found. Likewise, we may assume that none of the memoranda of bets, etc., were in the handwriting of any of the defendants. What then was the evidence that connected the defendants with the bookmaking?
Let us first take the case against Meola: The day of the raid, about half an hour after the police had taken possession, they noticed Meola entering the garage. They brought him into the front part of the building and asked, "Are you the *217 proprietor here?" and he answered in the affirmative. But he was the proprietor of the Trucking Company, and his motor truck was in the garage that day. Lieutenant Falb testified that Meola said, "that he got $75 a week for renting the place and that he done the wiring on that telephone set up in this back room where this was being conducted."; that he said either the defendant Rosenson or the defendant Silverman paid him the money. Falb added that he did not believe Meola had done the wiring. Perhaps he detected sarcasm in Meola's statement, or perhaps the wiring job looked too professional.
Next for the case against the defendant Krubit. When the police arrived at 317 Frelinghuysen Avenue, three of them broke in the front door and three  Gill, Schelling and McCormack  hurried down the alley. As they reached the garage, an automobile was slowly backing out into the alley. It was Krubit's car and he was driving it, and with him were Rosenson and Silverman, one seated beside Krubit and one in the back seat. They had extra suits and other clothing in the car, as if they were going on a journey. Detective McCormack sprang to the driver's side of the car and Schelling to the right side. McCormack testified that he saw in the car, on the floor between Krubit and the other man, a certain brief case; that later ("We took care of the prisoners first.") he got the brief case and in it were found papers relating to bookmaking. Schelling, on the opposite side of the car, did not see the brief case. Detective Gill testified that after the defendants had been taken to the front of the building, he found the brief case outside of the car on the floor of the garage and that he picked it up and put it on the front seat of the car. The State's case leaves it most doubtful whether the brief case was in the automobile before Gill put it there. Also, Falb testified, on cross-examination, that Krubit and Silverman and Rosenson admitted to him that they were in the front part of the building, "this room where the telephones are," before the police made the raid.
The foregoing is a summary of all the evidence relied on by the State to prove the guilt of Krubit and Meola. We have *218 not mentioned that each had been convicted of crime on a prior occasion and that one of them gave a false address when arrested. Such circumstances have no relevance to the question whether they were guilty of the offense now charged.
Meola testified that he went to the garage at 317 Frelinghuysen Avenue the day in question to look after his truck. He denied that he told Lieutenant Falb that he had done the telephone wiring, or had rented the premises to Rosenson and Silverman, or was paid by them $75 a week. Krubit testified that he, Rosenson, Silverman and William Doehler, had planned to go to Atlantic City for the weekend of July 4th; that the first three were to meet Doehler at 317 Frelinghuysen Avenue early Friday afternoon; that at the appointed hour they were there but did not find Doehler; they waited twenty minutes or so, and were just leaving when the police arrived. The clothes found in the automobile support this tale to some extent. Krubit denied that the brief case was in the car or that he ever saw it until his arrest.
We need not elaborate on the weakness of the State's case against these two men. It has not enough substance to stand up even against the slight weight to be given to the explanations and denials of Meola and Krubit. The verdict against them was plainly against the weight of the evidence.
Lieutenant Falb testified that when he answered the telephone calls that came in during the raid, the persons calling asked for "Willie" or "Irving." Observe that the first names of the defendants Rosenson and Silverman are William and Irving. Falb also testified that although these two defendants were only six or seven feet away when Meola said they paid him $75 a week, they did not deny paying him the money; that they, like Krubit, admitted they had been in the building before the raid. Detective Kenny added the very important item that he asked Rosenson, in the presence of Silverman and Krubit, "Who do you book for?" The last two said nothing, but Rosenson replied, "You wouldn't know him. He isn't from this area." Krubit testified that he did not hear this alleged colloquy, although he was close to Rosenson all the time.
*219 The case against Silverman and Rosenson, especially the latter, is stronger than the case against the other defendants. If Detective Kenny's testimony be accepted as true, Rosenson's guilt is clear. Neither Rosenson nor Silverman testified. In this state of the evidence, we cannot say that their conviction is against the weight of the evidence. In addition to the weight of the evidence, they urge as reasons for reversal the reception of certain evidence and an allegedly erroneous passage in the charge to the jury. We need not consider these reasons for no objection was made at the trial, and the defendants suffered no manifest injury from the admission of the evidence or from the charge. The judgment will be affirmed as to Silverman and Rosenson, and reversed as to the other appellants.