27 N.J. Super. 382 (1953)
99 A.2d 426
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CHARLES CARRANO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 9, 1953.
Decided September 24, 1953.
*384 Before Judges EASTWOOD, JAYNE and FRANCIS.
Mr. David H. Harris, Special Deputy Attorney-General, argued the cause for the plaintiff-respondent (Mr. Theodore D. Parsons, Attorney-General, attorney).
Mr. James A. Major argued the cause for the defendant-appellant (Mr. Joseph H. Gaudielle, attorney).
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
The defendant appeals from a judgment convicting him of the crime of bookmaking, entered in the Law Division, Bergen County.
On September 25, 1951 police officers placed the Edgewater Iron Works, Edgewater, New Jersey, under surveillance and pursuant to a search warrant, the investigating party entered upon the premises and encountered Wilbur Prescott and another in a driveway near the building. As the party entered the building they encountered the defendant Carrano. Carrano turned and started for the interior of the building and was observed throwing away a paper which was retrieved and proved to be a scratch sheet showing the running of horses in various races that day.
One of the officers testified that Carrano stated that he was there to answer the telephones and to take bets on the telephone. There were three telephone lines in the building, one coin box telephone placed there at Carrano's request and two desk telephones in adjoining rooms. Prior to the investigating party's entry into the building, one of the *385 officers made a call to the coin box telephone and a voice answered by saying "Kelly." Within a matter of approximately six minutes after the police officers entered the building, the coin box telephone rang and a police officer answered it and received a bet on the horse races. Thereafter, calls were received on all three telephones and bets were placed by the callers. The bets were directed to "Kelly" and were received from callers using code names. A search of a desk revealed two sheets received in evidence, acknowledged by Carrano as belonging to him, which list contained customers' names, some of which corresponded to those calls taken by the police officers. Also received in evidence was a slip of paper containing the names of three horses in the first race at New York on September 10, 1951. In the rear of the building police officers found charred remnants of a racing form for September 11, 1951.
Carrano and William Prescott were placed under arrest and taken to the county court house in Hackensack, where both made statements. Carrano's statement was made in question and answer form in the presence of two police officers and the statement was reduced to typewritten record as it was made. Thereafter, it was testified that Carrano read the statement and at the conclusion said, "You've got it all written down, but I'd rather sign it before my lawyer." At the trial, the court took testimony in the absence of the jury on the question of the voluntariness of the confession and whether Carrano had acknowledged the accuracy of his statement reduced to writing. The court having determined that both questions should be answered in the affirmative, admitted the same into evidence. Following the ruling on the admissibility of the statement, testimony by both parties was received in the jury's presence as to the circumstances surrounding the giving of the statement and the determination of its weight was left to the jury.
The defendant contends that the trial court erred: (1) in admitting the unsigned statement into evidence; (2) in permitting the police officers to testify as to alleged telephone conversations with persons desiring to place bets; (3) in *386 admitting the charred remnants of racing forms found outside the building; and (4), in admitting into evidence a newspaper known as The Morning Telegraph.
The Court of Errors and Appeals considered the question of admissibility of unsigned confessions in the case of State v. Donato, 106 N.J.L. 397 (1930). In that case statements were given by four alleged criminals and were reduced to writing by police officers and presented to the confessors, two of whom signed the statements and two of whom did not deny the accuracy of the statements but declined to sign them. Finding the statements to have been given voluntarily without any force, threats or promises whatsoever, and to have been acknowledged as accurate records of the oral utterances, the court held the statements to be admissible.
The court stated, in part, at pages 405, 406:
"Confessions are admissions, made at any time by a person accused of crime, stating or suggesting the inference that he committed or participated in the commission of that crime. Underh. Cr. Ev. (3d ed.), sec. 215. Such are the statements in question. The statements were in writing and were respectively taken down by police officials. * * *
* * * No suggestion was then made that the statements were inaccurate in the slightest respect. The undisputed proof at the trial was that they were accurate.
We think there was no error prejudicial to such defendants in their admission in evidence. It is said in 2 Whart. Cr. Ev. 1329, that `it is not necessary to the admissibility of a written confession * * * that it should be signed by the accused' (citing State v. Haworth, 24 Utah 398, 68 P. 155; State v. Eaton, 3 Harr. 554; State v. Johnson, 5 Harr. 507). * * * the undoubted rule is that a confession of the accused which was reduced to writing by another person and was read over to or by the accused, and which was signed or otherwise admitted by him to be correct, is as much his written confession as one prepared entirely by his own hand would be; and when made voluntarily it is admissible against him. 16 C.J. 732. And where, as here, a confession of the accused, made voluntarily, which was reduced to writing by another person, but which the defendant refused to sign, when it was presented to him for that purpose, `until he sees his counsel' or `on the advice of counsel,' and for no other reason, it was not prejudicial error to admit such written confession, it appearing that the writing was clearly proved, before its admission in evidence, to be entirely accurate, with no evidence  not even a suggestion  that there was any *387 inaccuracy in the writing, although the accused was accorded ample opportunity to make such showing if he could. In this connection it is to be borne in mind that the fundamental object of proof of a confession is to render it trustworthy."
We observe the striking similarity between the Donato case and the matter sub judice. In the matter before us the facts indicate that Carrano made a statement voluntarily in question and answer form, which statement was reduced to writing by police officers as it was made. Thereafter it was presented to Carrano and he read it and stated: "You've got it all written down, but I'd rather sign it before my lawyer." We are convinced that Carrano's quoted statement is an acknowledgment of the accuracy thereof and, under the authority of the case of State v. Donato, supra, the trial court properly held it to be admissible.
The holding of the Donato case has been upheld by our present Supreme Court in the case of State v. Cleveland, 6 N.J. 316 (1951), wherein the court reviews the case law of this State and concludes that to be admissible in evidence the statement must be signed or otherwise acknowledged by the confessor to be correct. We find this condition satisfied by Carrano's statement after reading the written confession and the absence of any challenge of its accuracy after he had read it. Cf. State v. Cooper, 10 N.J. 532, 554 (1952).
Considering the circumstances of the entire case, the fact that Carrano admitted to the investigating officer that he was in the office building in question to answer the telephones and to take bets; that in answering the telephone call made by the officer a few minutes prior to the entry of the raiding party, a voice answered merely by announcing himself as "Kelly"; the fact that there was found in the desk two sheets which were acknowledged by Carrano as belonging to him and being a list of customers who placed bets with him, upon which list are found code names for customers, including "Maple," "7th Avenue," "Lou" and "Coop," similar to several of the names of persons who called in immediately following the raid in an effort to place horse bets with "Kelly"; the fact that defendant attempted *388 to destroy a scratch sheet on the horse races and the fact that defendant admitted in his confession that he had requested the installation of the coin box telephone, we do not consider it error for the trial court to have admitted the testimony of the police officers concerning the receipt of telephone calls at defendant's office by persons attempting to place horse race bets.
As stated in State v. O'Donnell, 8 N.J. Super. 13, 16 (App. Div. 1950):
"The telephone conversations concerning the betting were admissible to show defendant's complicity in the offense. * * * The nature of the conversation made it competent as a material circumstance in the case. Of course, such evidence should be admitted with caution (because of the ease with which it may be counterfeited) and, should not be received at all, except when the circumstances rebut every suspicion that it may be spurious. Commonwealth v. Prezioso, 157 Pa. Super. 80, 41 A.2d 350 (Pa. Sup. Ct. 1945). Here there is nothing to suggest that the evidence is not genuine. Identification of the person calling is not, in a case of this kind, essential to the admissibility of the conversation. What is said by one initiating a call, by disclosing intimate knowledge, may so identify him and the person whom he calls as associates in the enterprise, as to make the whole conversation admissible. Commonwealth v. Prezioso, supra; Commonwealth v. Palace, 164 Pa. Super. 58, 63 A.2d 511 (Super. Ct. Pa. 1949). The admissibility of evidence of this kind, has been inferentially recognized by our courts, in cases of this nature. State v. Meola, 6 N.J. Super. 214 (App. Div. 1950)."
We entertain some doubt as to whether the State established that the charred remnants of racing forms found outside the building were the property of the defendant or within the possession of the defendant so as to be admissible as evidence against him. State v. Meola, 6 N.J. Super. 214 (App. Div. 1950). Aside from this evidence, there was plenary evidence to support the verdict of the jury. We are satisfied that by its admission there was no substantial harm or prejudice to the defendant.
Our examination of the record reveals that Troopers Tittle and Baluit were qualified before the court as experts in matters of horse racing information and knowledge of *389 the use of racing forms and the like. The Morning Telegraph was identified as a newspaper devoted exclusively to racing information and used as a source of information by bettors, bookmakers and others interested in betting.
The admissibility of publications specializing in a particular type of information has been recognized by text writers and courts. In 6 Wigmore on Evidence (3d ed.), sec. 1704, p. 26, it is said:
"A printed list of prices at which a class of goods is for sale to any purchaser, or a printed report of the prices obtained at actual sale in an open market, may become trustworthy so far as it is intended to be consulted by all persons who care to know the prices, and has been exposed to a test of accuracy by dealings with such persons on the faith of it, and has further been in their experience found generally reliable (ante, sec. 1702). A price-current list or a market report which fulfils these conditions and has thus sufficed for the correct information of persons who transact commercial operations on the faith of it may well suffice for informing a court of justice. It would not be necessary that the compiler of it should have personal observation of each dealing reported or going to make up the market price reported, because the practical equivalent of personal observation here exists; a report based on direct consultation with dealers or with the officers of an exchange or a market is in commercial circles taken as equally reliable (ante, sec. 719).
Such standard price-lists and market reports, indorsed by trade experience, ought to be admissible on the principle of the present exception:"
And in sec. 1706, pages 33, 34 and 35, with respect to commercial and professional registers, it is said:
"There are many other kinds of registers, records, reports, compilations, and the like, which may in a given case fulfil the requirements already indicated (ante, sec. 1692) as sufficient for this exception. A printed pedigree-register of blooded animals, for example, made by a person having more or less direct acquaintance with the subject-matter, intended to be publicly circulated and consulted by persons interested and informed, tested by their use, and found by their experience to be trustworthy and actually relied upon as the basis of transactions in the trade, is a typical illustration.
The principle, indeed, has large possibilities, which have already been recognized, though with due caution, by the Courts and in a few statutes. The application of the principle might well be left largely in the hands of the trial Court." *390 Cf. More-Jonas Glass Co. v. W.J., &c., R.R. Co., 76 N.J.L. 708 (E. & A. 1909).
The testimony of the State's experts on the general acceptance of The Morning Telegraph as a responsible periodical "in the trade" would in our opinion warrant the trial court, in its discretion, in finding that the periodical was admissible as a record of the events covered therein.
The judgment of the Law Division is affirmed.