131 N.J. Super. 292 (1974)
329 A.2d 581
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN EDWARD McGEE, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 26, 1974.
Decided December 12, 1974.
*294 Before Judges HALPERN, CRAHAY and ACKERMAN.
Ms. Randall W. Westreich, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender of New Jersey, attorney).
Mr. Peter S. Hamerslag, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by HALPERN, P.J.A.D.
Defendant appeals from a judgment of conviction, following a jury trial, for the unlawful possession of a gun without a permit (N.J.S.A. 2A:151-41) and for bringing a stolen gun into the State (N.J.S.A. 2A:119-9). *295 He was acquitted by the jury of receiving stolen property, the same gun (N.J.S.A. 2A:139-1).
Defendant's application for a new trial was denied. He was sentenced to concurrent 3-5-year State Prison terms. The sentences were suspended and he was placed on probation for a period of five years.
The relevant facts can be briefly summarized. At about 1:30 A.M. on January 31, 1972 State Trooper Richard Gallo, with defendant's permission, searched defendant's car and found a loaded .22-caliber Harrington and Richardson revolver, serial number A.G. 45438, beneath the driver's seat. The gun was turned over to Detective Sergeant John Lintott, a firearms expert. Lintott checked the gun's serial number against the records of gun sales in New Jersey in an effort to identify it, and when no sale record was found he furnished information to the National Crime Information Center[1] (N.C.I.C.) in Washington, D.C., to ascertain whether the gun in question had been reported as having been stolen. He was advised by someone at the N.C.I.C. terminal that the gun found in defendant's car answered the description furnished to it by the Baltimore City, Maryland, Police Department on April 15, 1971, and that it had been stolen. Presumably a computer printout was sent by N.C.I.C. to Lintott confirming the oral notification, but it was not produced at the trial and Lintott was permitted to testify to its contents over defendant's objection. Defendant's application for a mistrial was denied.
Defendant denied having any knowledge of the gun's presence in his car. The substance of his explanation for the *296 gun's presence was that he had brought the car about a month before the incident in question and had never looked beneath the driver's seat  implying it could have been there when he acquired the car. In addition, he testified that he had driven from Maryland to New Jersey with an acquaintance as a passenger who had some luggage with him  again intimating that perhaps his passenger, whom he was unable to locate, had left the gun beneath the seat on exiting the car in Newark.
The dispositive issue presented is whether the information obtained by Lintott from N.C.I.C. was properly admitted into evidence. This issue is crucial because in order to convict defendant for bringing a stolen gun into this State the State had to prove, in addition to knowledge of the gun's presence and defendant's possession thereof, that it had been stolen.
The trial judge permitted Lintott's testimony into evidence primarily upon the theory that
Now, on the area of the N.C.I.C., and I have done this deliberately, purposefully, not with talking to the Prosecutor, but, and I may be wrong, I may be wrong, but it seems to me in this day and age with our modern technology we get license look-ups, it comes into Court, and it seems to me that while it is technically hearsay, it's an incursion into another exception and it's almost, as I see it, sort of a  a business record or a public record of some sort, with the advent of the N.C.I.C., which I believe went on the line sometime in 1967 or 1968, that this type of a  of an exception in the line of a business record should be permitted as far as admissibility.
Now, as far as what weight is to be given to this type of a  of a read out from the computer check out, that would be for the jury.
It is obvious from what the trial judge said that he felt the data furnished Lintott by N.C.I.C. was trustworthy and, therefore, admissible as a business record under Evid. R. 63 (13).
For the first time on this appeal the State contends it was admissible under Evid. R. 63(30) which provides:

Rule 63(30). Commercial Publications And The Like.
Evidence of a statement of matters of interest to persons engaged in an occupation contained in a list, register, periodical, or other *297 published compilation is admissible to prove the truth of any relevant matter so stated if the compilation is published for use by persons engaged in that occupation and is generally used and relied upon by them.
It should be noted that Evid. R. 63(30) creates a new exception to the hearsay rule, and is not contained in the Federal Rules. We agree that Evid. R. 63(30), on its face, would appear to permit the type of hearsay here involved to be admitted into evidence because (a) N.C.I.C. is engaged in the occupation of maintaining listed data of stolen guns throughout the country which is of interest and concern to all police authorities in the country; (b) the data is compiled and published for the use by police authorities engaged in the occupation of apprehending criminals involved with stolen guns; (c) the data furnished is used and relied on by police authorities, and (d) the difficulty of obtaining direct testimony as to the preparation of the compiled data outweighs technical objections to its use as evidence. While the manner of the list's compilation affects only the weight to be accorded the evidence and not its admissibility, the burden of determining whether the offered evidence qualifies as being trustworthy must be decided by the trial judge in the first instance under Evid. R. 8. See Commentary, § 63(30)-2, made in connection with the proposed adoption of Evid. R. 63(30). A strong argument can be made that the data compiled by N.C.I.C. was nothing more than a compilation of reports of stolen guns to be used as investigative tools by the police throughout the country, with no thought in mind that standing alone it could be utilized to furnish substantive proof that a gun had been stolen.
As indicated, the trial judge permitted Lintott's testimony into evidence on the basis of Evid. R. 63(13). If Evid. R. 63(13) were applicable, his testimony would have been inadmissible because the owner of the gun who originally furnished the information about the theft of the weapon to the Baltimore police was under no duty to make a truthful account of the facts furnished. Fagan v. Newark, 78 N.J. *298 Super. 294, 319 (App. Div. 1963). The same standards in judging trustworthiness of furnished information are applicable to evidence sought to be introduced under Evid. R. 63(30).
We believe the trial judge mistakenly exercised his discretion in finding that the data furnished by N.C.I.C. was sufficiently trustworthy to justify its admission. Accepting Lintott's expert testimony of how N.C.I.C. functions, we still do not know (a) how and when the information furnished by the owner of the gun was passed on to the Baltimore police; (b) how and who fed the information into the computer; (c) who programmed the computer and how it was done; how the data was retrieved from the computer; the accuracy of those who operated the computer. Most importantly, the printout supporting the proffered evidence was not produced. Under the circumstances existing here, the evidence should not have been admitted. It is worthwhile to restate what a trial judge's polestar should be in passing on this type of proffered testimony
In a criminal case where a person's life or liberty is at stake and guilt must be proved beyond a reasonable doubt, a court should be reluctant to broaden the scope of an exception to the hearsay rule unless the type of statement sought to be admitted carries with it strong and convincing indicia of trustworthiness. Further, this reluctance should be particularly great when the declarant, like Ellerbee, is available and able to testify at the trial. [State v. Taylor, 46 N.J. 316, at p. 332 (1966)]
See, also, the special problems arising from the attempts to use computer printouts under the business records exception to the hearsay rule in McCormick, Evidence, § 306 at 733-734 (1972). It would appear from the record that the owner of the alleged stolen gun resided in Baltimore, Maryland, and was available as a witness, but for some unexplained reason was not produced by the State. Since the only proof presented to show that the gun was stolen was improperly admitted, the conviction of defendant for bringing a stolen gun into the State must be reversed.
*299 In light of our indicated reversal, we have concluded that defendant's conviction for unlawfully possessing a gun without a permit must also be reversed. We recognize, that in connection with this charge, the State did not have to prove the gun found in defendant's car to have been stolen. Nevertheless, the jury having heard testimony of a stolen gun and, in fact, having found that defendant unlawfully brought it into this State, the resulting prejudice had a strong tendency to spill over and taint the verdict on the charge of possessing a gun without a permit. Any other conclusion would be highly speculative and unwarranted under the circumstances.
The judgment below is reversed and the matter remanded for a new trial on both charges.
NOTES
[1] N.C.I.C. is a government agency which, among other functions, receives reports from police authorities throughout the entire country concerning stolen guns. The information received is fed into a computer. Upon receipt of inquiries concerning stolen guns from police authorities, the computer will emit a printout which indicates whether a given gun has been reported as stolen, a description of the gun, the date allegedly stolen and the name of the police agency which made the initial report of the theft.