188 N.J. Super. 115 (1982)
456 A.2d 119
STATE OF NEW JERSEY, PLAINTIFF,
v.
ROBERT BANTA, DEFENDANT.
Superior Court of New Jersey, Law Division Morris County.
Decided November 23, 1982.
*117 Jeffrey M. Advokat, Assistant Prosecutor, for the State (Lee S. Trumbull, Prosecutor, Morris County, attorney).
Barry G. Evertz for defendant.
MacKENZIE, J.S.C.
Defendant is on trial for criminal sexual contact with his stepdaughter, in violation of N.J.S.A. 2C:14-3 b. The 17-year-old girl testified that while she was in bed at night watching the movie Frankenstein, defendant climbed onto her bed and began to fondle her. Her testimony about the movie was definite and unequivocal. She remembered that defendant pointed out a particular character in the movie, Igor, for her to watch while the alleged incident took place.
Testifying in his defense, Banta denied any sexual contact with his stepdaughter. He also sought to discredit the testimony of the alleged victim by offering in evidence the television program guide from a daily newspaper. Frankenstein was not listed for showing on any of the local television channels.[1] Does a newspaper listing of television programs qualify for admission into evidence?
The general rule is that articles in newspapers and periodicals are inadmissible because of their hearsay character. E.g., Samuel Sheitelman, Inc. v. Hoffman, 106 N.J. Super. 353 (App.Div. 1969), certif. den. 55 N.J. 591 (1970); State v. Otis Elevator Co., 10 N.J. 504 (1952). See, also, Annotation, "Newspaper article as evidence of the truth of the facts stated therein," 55 A.L.R.3d 663 (1974). "Commercial publications and the like" are, however, exceptions to the hearsay rule. Evid.R. 63(30). This rule provides:

*118 Evidence of a statement of matters of interest to persons engaged in an occupation contained in a list, register, periodical, or other published compilation is admissible to prove the truth of any relevant matter so stated if the compilation is published for use by persons engaged in that occupation and is generally used and relied upon by them.
Defendant argues that the listing is admissible under this rule.[2]
Since the adoption in New Jersey of the Rules of Evidence, two opinions have discussed the criteria contained in Evid.R. 63(30).[3] See State v. Lungsford, 167 N.J. Super. 296 (App.Div. 1979) and State v. McGee, 131 N.J. Super. 292 (App.Div. 1974). The theory of this exception to the hearsay rule is the "general reliance by the public or by a particular segment of it, and the motivation of the compiler to foster reliance by being accurate." State v. Lungsford, 167 N.J. Super. at 305.
In McGee the court rejected a computer report of a stolen gun from the National Crime Information Center because of insufficient proof to support the reliability of the data received. Similarly, in Lungsford lack of trustworthiness in the factory-trace information provided by the National Auto Theft Bureau about a stolen car barred admission. In both cases the State *119 failed to construct a satisfactory foundation to support admission of the specialized data it offered.
This court held a hearing out of the presence of the jury to determine admissibility of the television listings. Evid.R. 8(1). Defendant presented satisfactory proof that the guide is published for use of those who watch television and regard it as generally helpful in planning their viewing schedule. The newspaper is sold, not given away, and accordingly meets the test of being a "commercial publication." Still, the rule requires that the publication be addressed to those engaged in an "occupation."
"Occupation" is not listed in the portion of the Rules of Evidence, Evid.R. 62, which provides definitions for the hearsay rule. The comment which follows Evid.R. 63(30) suggests that "occupation ... should be broadly construed." N.J. Rules of Evidence (Anno. 1980), Comment 3 to Evid.R. 63(30). The State contends that "occupation" must be construed as implying a specific trade, calling or a profession. In my judgment that definition is too narrow and ignores the instruction of the Review Commission found in the comment to the rule.
For the purpose of this opinion, an occupation is regarded as "[t]hat which takes principally up one's time, thought and energies...." Black's Law Dictionary (rev. 5 ed. 1979), 973. An expanded definition of "occupation," broad enough to encompass those who expend their "time, thought and energies" in television viewing, is appropriate here. A great mass of the public is just as occupied in this avocation as are the many other millions who are engaged in income-generating occupations.[4] *120 Notice can be taken that there are tens of millions of viewers of the soap operas, situation comedies, sports events and other fare offered by the television industry and that they spend countless hours in front of their sets.[5] Plans are made every day to accommodate viewing preferences. This proposition is so generally known that it cannot be the subject of reasonable dispute. Evid.R. 9(1).[6]
To these untold millions of loyal followers, television program listings in newspapers or periodicals are consulted regularly and then relied upon in making plans. To accommodate this eager and demanding public, each television station must provide accurate information about its daily offerings. Newspapers and periodicals which cater to these viewers must be reliable in presenting the listings; failure to be accurate means the risk of incurring the displeasure of their readers. Thus, by a cooperative venture, the media combine to offer viewing alternatives to the public, and the public registers their choices by turning their channel selectors. The kind of trustworthiness upon which application of Evid.R. 63(30) depends is inherent in the process of printing television program guides. These listings are more than mere useful tools to the faithful, devoted followers of television; they are a secular bible.[7]
The analogy to State v. Carrano, 27 N.J. Super. 382 (App.Div. 1953), supports defendant's position. In Carrano the trial judge *121 admitted into evidence as proof the facts contained in The Morning Telegraph, a newspaper which provided information to those who were interested in horse racing. Among other data offered in that newspaper were the horses who were entered in the races of that day, the expected jockeys, the weight assigned to each horse and the conditions of the race. For those who bet, this data was considered valuable in making selections from the racing card. Relying upon the accuracy of the data provided, the betting public evaluates its choices and shows its commitment, or lack thereof, by putting its money down, or refraining. Similarly, the television viewing public evaluates its choices, or lack thereof, by consulting the program listings and shows its commitments by turning the channel selector on or off.
The final issue is authentication of the exhibit.[8]Evid.R. 67 allows that "Authentication may be provided by any evidence to sustain a finding of authenticity...." Circumstantial or direct evidence of authenticity is permitted. Defendant testified that the exhibit is a page from the newspaper. It looks and feels like a newspaper. I conclude that the exhibit is a newspaper. The likelihood of forgery is so slight indeed that there is no danger apparent in receiving the exhibit in evidence. The jury can decide its value, if any, and its weight.[9]
NOTES
[1] Previous testimony had established that television reception in defendant's house was limited to New York and New Jersey stations and that there was no cable connection.
[2] Defendant conceded that the "Business Entries" exception, Evid.R. 63(13), could not provide the basis to admit the exhibit because the newspaper was published before the programs are telecast, not after the fact as a record of what had been shown. Perhaps, records of programs actually televised which are kept by the Federal Communications Commission or of the various television stations could qualify under this exception. Production of these records seems unduly burdensome.
[3] Published statements have been admitted into evidence in cases which were decided before adoption of the Rules of Evidence. Market prices for steel contained in a weekly trade paper were admitted in Associated Metals v. Dixon Chemical, 82 N.J. Super. 281 (App.Div. 1964), certif. den. 42 N.J. 501 (1964). Life expectancy tables were accepted in Budd v. Erie Lackawanna RR. Co., 98 N.J. Super. 47 (App.Div. 1967), certif. den. 51 N.J. 186 (1968). A newspaper providing horse racing information exclusively was allowed into evidence in State v. Carrano, 27 N.J. Super. 382 (App.Div. 1953). In each instance, the published statements were supported by foundation proof as to their reliability and their acceptance in the community which used them.
[4] Of course, there are others who are employed or otherwise engaged in the television industry itself, but their status is disregarded for the purposes of this opinion.
[5] A trial judge recently took notice of an article in a nationally circulated periodical attesting to the general acceptance of a specific test for paternity. Malvasi v. Malvasi, 167 N.J. Super. 513 (Ch.Div. 1979).
[6] That the viewing public also generate any thought or expend any energy in television watching is a proposition of dubious validity.
[7] Overnight, and before the exhibit was marked into the record, the prosecutor was invited to research other printed program listings for the night in question, or to contact the stations directly. He was unable to turn up any evidence that Frankenstein was in fact presented to the public on the particular night.
[8] New Jersey has no counterpart to Fed.R.Evid. 902(6), which makes newspapers self-authenticating. There is an exception to the federal hearsay rule which permits admission of miscellaneous commercial registers, records, reports and compilations. Fed.R.Evid. 803(17).
[9] Defendant concedes that there is no guarantee of absolute correctness in this guide. Occasionally, there are last-minute, unannounced program changes, sometimes the newspapers may omit a scheduled program or contain a typographical error. The exhibit may or may not tend to impeach the testimony of the alleged victim, depending on how the jury evaluates all the evidence.