Brian Eugene CONNELL, Appellant,

v.

STATE of Indiana, Appellee.

No. 183S28.

Supreme Court of Indiana.

Nov. 16, 1984.

Jack Quirk, Muncie, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from convictions of burglary, a class B felony, Ind.Code § 35–43–2–1 and robbery, a class B felony, Ind.Code § 35–42–5–1. Appellant also appeals from a determination that he is a habitual offender. The case was tried before a jury. Appellant was sentenced to ten years for burglary and ten years for robbery to be served concurrently. Appellant received a thirty year enhancement on his ten year sentences for being determined a habitual offender.

Appellant raises seven issues on appeal: (1) whether the trial court erred in admitting into evidence a photograph of the victim's suitcase and its contents; (2) whether the trial court erred in allowing the victim to make an in-court identification on the basis of an allegedly unduly suggestive photo array; (3) whether the trial court erred in allowing the victim to answer a question which allegedly called on him to characterize the evidence; (4) whether the trial court erred in allowing the testimony of Mildred Butler and Officer Hittson; (5) whether the trial court erred in admitting into evidence a television listing from the Muncie Star Newspaper; (6) whether the trial court erred in admitting into evidence State's Exhibits I and J during the habitual offender phase; (7) whether the habitual offender determination was supported by sufficient evidence.

These are the facts that tend to support the determination of guilt. On the afternoon of December 4, 1981, Kirby Wilson returned to his apartment located at 213 East North Street, Muncie, Indiana. As he approached the apartment, he noticed that the rear door was slightly ajar. Wilson entered the apartment and observed an individual with a gun taking various items. The perpetrator told Wilson: "I've got a gun, get out the back door now." When Wilson fled from the apartment in order to call the police for assistance, he saw the perpetrator leave the area in a light green Chevrolet Chevelle. Subsequently, the police arrived at Wilson's apartment and observed that the rear door was damaged and that the apartment had been ransacked. Wilson discovered that his stereo turntable had been stolen.

On December 7, 1981, Mildred Butler, who resided at 803 South Vine Street in Muncie, called the Muncie Police Department to request that the police remove articles from her residence that she believed to be stolen. Mrs. Butler told Officer Donald Scroggins that appellant resided with her periodically and that he stored various items in her residence. Prior to the confiscation of the property, Mrs. Butler signed both a waiver of rights and a waiver for search. During the confiscation, appellant telephoned the Butler residence and told Officer Scroggins that the police did not have a right to remove his property.

Thereafter, Officer George Wilson took an inventory of items recovered from the Butler residence. He noticed a brown suitcase, opened it, and discovered papers inside that listed Kirby Wilson's name. Officer Wilson recalled that he had seen the name of Kirby Wilson on a burglary report, so he telephoned Kirby Wilson. Kirby Wilson identified the suitcase as his own, and also identified appellant during a photo array as the perpetrator.

Subsequently, on December 10, 1981, Mrs. Butler called the Muncie Police Department to inform them that her residence had been shot. As Officer Charles Hittson approached the residence, he noticed appellant driving a light green Chevrolet Chevelle. Officer Charles Hittson attempted to apprehend appellant, but appellant jumped from his vehicle and fled the area carrying a rifle. Appellant was eventually apprehended by police.

## I.

Appellant contends that the trial court erred by denying his pre-trial motion to suppress and by admitting into evidence a photograph of the victim's suitcase and its contents. The police removed the suitcase from the residence of Mildred Butler after they had obtained her consent to search her residence. Suppression of this evidence was sought on the basis that the evidence was the result of a police search and seizure in violation of the Fourth Amendment. Appellant argues that he had a legitimate expectation of privacy in the premises searched and, thereby, had standing to challenge the seizure of the evidence and its use against him at trial.

However, in order to preserve error on this issue, it was necessary for the appellant to object to this evidence at the time it was offered at trial. It is not sufficient to rely on the denial of the motion to suppress. Appellant did not object at trial when the photograph of the seized items was offered into evidence; therefore, appellate review is foreclosed. See, *Riley v. State* (1981), Ind., 427 N.E.2d 1074.

## II.

Appellant contends that the trial court erred by denying his motion to suppress all evidence as to the photographic display and as to any in-court identification of him by the victim. Appellant claimed that the photographic display was unduly suggestive.

In order to preserve error on this issue, it was necessary for the appellant to object to the victim's in-court identification testimony of him at trial. It is not sufficient to rely on the denial of the motion to suppress. Appellant did not object to the victim's in-court identification of him; therefore, appellate review is foreclosed. See, *Riley* supra.

## III.

Appellant objected to a question proposed by the State to the victim because the question allegedly sought an opinion as a response. The exchange is set out here.

Q. Are you absolutely certain that the defendant in this case is the same person ...

Jack Quirk: I'm going to object.

A. ... who robbed your apartment that date?

Jack Quirk: I'm going to object to that because it calls for character, characterizations. Also, the thing that he said before about never forgetting a face, that's just characterization and presumption on his part. And I would object, ask that those things go out. Court: That's a fair question. The objection is overruled. You may answer.

A. Yes that was him.

The rulings of a trial judge on the admissibility of evidence are accorded wide latitude on appeal. *White v. State* (1981), Ind., 425 N.E.2d 95. We agree with the appellant that the prosecutor's question called on the witness to characterize the evidence. However, to constitute reversible error, the appellant must also show a substantial injury by the answer to the improper question. Here, it is clear that appellant did not suffer substantial injury. The victim had already identified him as the perpetrator of the crime; consequently, the victim's response to the improper question was cumulative. There is a point when repeated responses to questions which call for the witness to characterize a specific segment of the evidence become unduly prejudicial. However, that point was not reached here.

## IV.

On December 7, 1981, Mildred Butler called the police to remove appellant's articles that she believed to be stolen. During the confiscation, appellant telephoned her residence and told Officer Scroggins that the police did not have a right to remove his property.

On December 10, 1981, six days after the burglary of Wilson's apartment, Mildred Butler called the police because someone

was shooting at her house. Officer Hittson responded to the call, and he noticed appellant driving a light green Chevrolet Chevelle. Hittson attempted to apprehend him, but the appellant parked his vehicle and fled the area with a rifle in his possession. The police gave chase, but they could not catch him; however, they did find the rifle. Later, appellant was sighted in an Oldsmobile and arrested. Appellant argues that the trial court erred when it allowed the testimony of Mildred Butler and Officer Hittson concerning the events just mentioned. Appellant claims the testimony was irrelevant.

■ Relevancy has been defined as evidence which renders the desired inference more probable than it would be without the evidence. *Pirtle v. State* (1975), 263 Ind. 16, 323 N.E.2d 634, 643. Evidence tending to prove a material fact is admissible. *Stowers v. State* (1977), 266 Ind. 403, 363 N.E.2d 978. Evidence however, which would otherwise be admissible, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. See *Kiefer v. State* (1958), 239 Ind. 103, 153 N.E.2d 899.

■ Here the testimony of the shooting of the house and the testimony of the subsequent flight from the police were both relevant. The appellant had knowledge of the fact that Mildred Butler had turned in his name and booty from the crime to the police. Consequently, appellant's act of shooting at her house gives rise to the inference that he was threatening and harassing a potential witness, and thus, such evidence is relevant on the issue of guilt. "Any evidence which legitimately tends to connect a defendant with a crime is admissible when only a reasonable inference of guilt might be deduced from the evidence." *Gray v. State* (1982), Ind., 437 N.E.2d 983. Furthermore, evidence that an accused tried to avoid arrest is relevant and admissible as circumstantial evidence of guilt. *Short v. State* (1982), Ind., 443 N.E.2d 298. In the case at bar, the probative value of the circumstantial evidence of guilt outweighs the danger of unfair prejudice.

## V.

At trial, appellant attempted to establish an alibi. He testified that he was at the residence of Kelly Lynn Beneford at the time of the crime. Beneford testified that appellant was at her residence from 12:30 P.M. to 2:30 P.M. on December 4, 1981; the time of the crime. Also, she testified that she remembered the times because there were cartoons on the television.

On rebuttal the State was permitted to introduce as Exhibit H, the television listing for the day in question. This schedule was contained in an issue of the Muncie Star, a newspaper. A police officer sponsor, testified that it was the paper for the day, and that it had been procured by him from a reporter for the paper, and he also testified that the cartoon, Tennessee Tuxedo, was on at 2:00 P.M. Appellant objected to the admission of the Exhibit on the grounds that it was hearsay, and the court ruled that it was not hearsay since it was admitted only to show "what is in the newspaper on December 4, 1981," and not what had actually been broadcast during the pertinent time period.

Hearsay evidence has been defined as follows:

"Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." McCormick, Evidence, § 225 (1954).

■ *Indianapolis Newspapers, Inc. v. Fields* (1970), 254 Ind. 219, 259 N.E.2d 651, 673. The rule applies to written as well as oral statements, and relates to the competency of matter and not its relevance. It ".. excludes extrajudicial utterances only when offered for a special purpose, namely, as assertions to the truth of the matter asserted." 6 Wigmore, Evidence § 1766 (3d. ed. 1940). *Indianapolis Newspapers, Inc. v. Fields, Inc.,* supra at

674. The rule applies to statements of fact which can be considered true or false. If the questioned utterance is offered to prove the fact of the utterance and not offered to prove the truth of the facts asserted, then there is no hearsay. The fact of the utterance may safely rest for its evidentiary value upon the credibility of any witness who may have heard or read it and testifies to it in court. The rule guards against fact asserted in an utterance because it rests for its evidentiary value, not upon the credibility of any witness who may have heard it, but upon the actual asserter who is absent from the trial. Hearsay evidence may nevertheless be admissible at trial under exceptions, the basis for which relates to the existence of adequate substitutes for cross-examination of the asserter.

The assertions in Exhibit H were not under oath, and those persons who may have made them were not present in court and subject to cross-examination. The trial court ruled however that the exhibit was not hearsay because the television listing was not offered to prove any fact. It is the purpose to which evidence is sought to be put which is at the heart of the application of rules of evidence. Here, the fact that a television listing appeared in the newspaper for the precise time of the crime had no connection with the question before the jury. It is clear to this court that it was sought to be introduced at trial for the purpose of influencing the jury to infer from the lack of scheduled cartoons, that cartoons were not in fact broadcast by the television stations as testified to by the alibi witness Beneford, and that she should not therefore be believed. The exhibit was therefore hearsay, and it was error to permit its introduction unless an exception to the rule justifies the action.

A trial judge in the State of New Jersey was faced with this issue. There the victim recalled the date and time of an attack upon her because she remembered viewing a movie *Frankenstein* being shown on a local television channel. The defendant was permitted to introduce a television guide from a daily newspaper which showed that *Frankenstein* was not listed for showing at the time. *State of New Jersey v. Banta* (1982), 188 N.J.Super. 115, 456 A.2d 119 (N.J.Super.L.1982). That court was of the opinion that the newspaper listing fell within a statutory exception to the hearsay rule for commercial publications, and might be admissible in federal court. The opposite position was taken in *People v. Burt* (1979), 89 Mich.App. 293, 279 N.W.2d 299.

There is presently in Indiana no one broad statutory or common law exception to the hearsay rule for commercial publications, as there was in New Jersey. There is likewise no generic exception based upon circumstantial probability of trustworthiness, and a necessity for the evidence. *C.T.S. Corp. v. Schoulton* (1978), 270 Ind. 34, 383 N.E.2d 293. However, rules of evidence must remain subject to change and modification to accommodate reality. *C.T.S. Corporation v. Schoulton,* supra. The pieces for an exception similar to the commercial publications exception in New Jersey are in place in Indiana. We sanction the admission of reports of regular markets for goods, including securities, published in newspapers of general circulation, as proof of value. I.C. 26–1–2–724. Those reports commonly show only bid and ask prices. Standard life tables are routinely sanctioned, *McCue v. Low* (1979), 179 Ind.App. 372, 385 N.E.2d 1162. This court has also permitted hearsay statements of facts, published in a newspaper advertisement, which are presented in conjunction with non-hearsay proof of the same facts. *Wright v. Haley* (1935), 208 Ind. 46, 194 N.E. 637. Cf. *Smith v. State* (1984), Ind., 468 N.E.2d 512.

There is good and sound cause upon which to predicate an exception to the hearsay rule to permit the impeachment use of a television schedule to persuade a trier of fact what program was or was not actually broadcast. First: the viewing of television programs is a most common experience, yet there is a superficial simplicity to the process of disproving a particular

broadcast by objective and unbiased proof. Second: the television listing is publicly announced and widely disseminated on a daily or weekly basis. Third: there is the widest of successful public reliance on the accuracy of listings. Fourth: their accuracy is dictated by the business interest of newspapers and television stations. Fifth: they are not intended to create evidence for court. Sixth: they are readily available and inexpensive.

The argument against the exception would be that the listings are periodically changed and are inaccurate. In our judgment this factor is no greater than is present upon consideration of market reports published in newspapers, business entries, and public records.

■ We now hold that the law of evidence reflect an exception to the hearsay rule warranting the introduction of television listings and schedules published in newspapers and periodicals on a regular basis and intended to be relied upon by the public and shown to the satisfaction of the court to be authentic.

### VI.

■ Appellant argues that the trial court erred by admitting into evidence, State's Exhibits I and J during the habitual offender phase of the trial. State's Exhibits I and J were certified copies of docket sheets. Appellant claims that the exhibits were introduced into evidence without a proper foundation. Copies of court docket sheets, properly certified, are admissible in a habitual offender proceeding as proof of prior convictions. *Griffin v. State* (1981), Ind., 415 N.E.2d 60, 70. *Sears v. State* (1983), Ind., 457 N.E.2d 192. *Hudson v. State* (1983), Ind., 443 N.E.2d 834. When so properly certified as true and complete by the clerk of court, they are self-authenticating and admissible without live testimonial sponsorship. *Anderson v. State* (1981), Ind., 426 N.E.2d 674. *Barnett v. State* (1981), Ind., 429 N.E.2d 625. Ind.R. Tr.P. 44(A)(1).

The challenged exhibits in this case were properly certified, and were also connected to appellant by means of the testimony of Judge Alva Cox and Probation Officer Thomas Ashley who in turn referred to appellant's convictions by charge and cause number. There was no error in the admission of the exhibits. The documents were sufficiently connected to appellant to establish their relevance, and the proper certification provided the necessary foundation for their admission. *Graham v. State* (1982), Ind., 441 N.E.2d 1348.

### VII

Appellant argues that the State failed to prove that he was convicted of two prior unrelated felonies; consequently, the evidence was insufficient to prove beyond a reasonable doubt that he is a habitual offender.

■ When the sufficiency of the evidence is presented on appeal, we will consider only the evidence most favorable to the State, together with all reasonable inferences to be drawn therefrom, and the conviction or habitual offender determination will be affirmed if there exists substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Lewis v. State*, (1976), 169 Ind.App. 172, 346 N.E.2d 754.

■ Here, the evidence most favorable to the State discloses that Judge Alva Cox testified that on September 22, 1977, in cause Number C77–37, appellant was found guilty of and sentenced for receiving stolen property. Also, Thomas Ashley, a probation Officer, testified that he prepared the appellant's pre-sentence report when the appellant was found guilty of theft, Cause Number CS 79–14, on December 17, 1979, and that the offense of theft had occurred on April 24, 1979. Furthermore, the docket sheets from Cause Numbers C77–37 and CS 79–14 were shown to the jury. It is clear that the appellant had been convicted of two prior felonies in accordance with Ind.Code § 35–50–2–8 and that the two were unrelated. Here, the evidence showed that the second felony was commit-

ted after the conviction for the first. Such showing clearly established the element of unrelatedness. *Erickson v. State* (1982), Ind., 438 N.E.2d 269 *Parrish v. State* (1983), Ind., 453 N.E.2d 234. There is sufficient evidence to support the habitual offender determination.

The convictions are affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.