Thomas HODGES, Appellant,
(Defendant below),

v.

STATE of Indiana, Appellee,
(Plaintiff below).

No. 885 S 342.

Supreme Court of Indiana.

June 14, 1988.

Susan K. Carpenter, Public Defender, C.H. Gardner, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

On March 8, 1985, Defendant–Appellant Thomas Hodges was found guilty by a jury in the Tippecanoe County Superior Court of two counts of child molesting, as class C felonies, and two counts of child molesting, as class B felonies. The jury also found Hodges to be an habitual offender. The court sentenced Hodges to ten (10) years on each of the class B felonies and to five (5) years on each of the class C felonies.

The sentences were to run concurrently. The sentence was subsequently enhanced by thirty (30) years due to the habitual offender finding. Hodges appeals directly to this court raising the following issues:

1. whether the trial court erred by denying Hodges' Motion to Dismiss two new charges which were joined with the original charges for trial;

2. whether the trial court erred in finding the victim, T.S., a child under 10 years of age, competent to testify;

3. whether the trial court erred in allowing the testimony of R.S., another child victim, under the depraved sexual instinct rule;

4. whether the trial court erred in overruling Hodges' objections to, and denying his motion to strike the testimony of victim T.S., based on vagueness as to the dates when the molestation was to have occurred and her age and intellectual capacity;

5. whether the trial court erred in admitting into evidence two of T.S.'s prior statements over Hodges' hearsay objections;

6. whether the trial court erred in admitting Hodges' incriminating statement over his claim of coercion;

7. whether the trial court erred in allowing the introduction of a statement made by Marsha Hodges over Hodges' objection that it was cumulative and irrelevant;

8. whether the trial court erred in refusing Hodges' tendered instruction no. 2;

9. whether the trial court erred in giving the court's final instruction no. 13, over objection;

10. whether the trial court erred in giving the court's final instructions nos. 20 and 22, over objection;

11. whether the trial court erred during the habitual phase of the trial in admitting into evidence, over objection, certified records of Hodges' prior convictions;

12. whether the trial court erred during the habitual phase of trial in refusing to accept the jury's first verdict, and in requiring the jury to return to their deliberations to correct the verdict.

The evidence most favorable to the verdict below shows that Hodges committed child molesting on T.S., his step-daughter. T.S. was five years old at trial. Using anatomically correct dolls, she related in her own words that Hodges had touched her between her legs and put his penis in her mouth. T.S. testified she had informed her mother. Marsha Hodges, T.S.'s mother and Hodges' wife, testified T.S. had said, on August 31, 1984, that Hodges had touched her. Marsha Hodges also said that on August 26, 1984, she had overheard T.S. tell Hodges "no, I'm telling mommy," while she was downstairs and T.S. and Hodges were upstairs. The State presented evidence of depraved sexual instinct through 12-year-old R.S., previously a neighbor of Hodges, who testified Hodges had touched her breasts twice and on one of those occasions reached in her pants to just past her navel. R.S. testified Hodges said he would want to make love to her if she were 5 or 6 years older. Judith Anderson, a child psychologist, and Elaine Stahl, a case worker with the county child protective services, testified as to statements and counseling with T.S. Following a polygraph examination, Hodges made an incriminating statement to the police. The tape recording of that statement was played for the jury. Hodges presented no evidence at trial.

I

In October, 1984, Hodges was charged with three counts of child molesting, under cause no. S-5097. Trial was set for March 5, 1985. On February 6, 1985, an additional count was filed consisting of an information of habitual offender. On March 1, 1985, the State filed four additional counts of child molesting, under cause no. S-5219, Counts I and II of which involved the same victim. At the same time, the State moved to join all of the charges for trial. In the interest of judicial economy and since Counts I and II were of the same type, their joinder was permitted pursuant to Ind.Code § 35-34-1-9(a)(1), resulting in Hodges being charged with five counts of child molesting against T.S. On March 6, 1985, Hodges filed a Motion to Dismiss the

counts from cause no. S–5219, on the grounds the information insufficiently described the offense by not alleging a specific date of offense, and that the new prosecution had not been brought in a timely manner because the offenses occurred within the last 2½ years. The court denied the motion and the trial proceeded.

■ Hodges argues the trial court erred by joining Counts I and II from cause no. S–5219 to the original charges for trial. Hodges first argues the two counts from cause no. S–5219 should have been dismissed because they were not timely filed, pursuant to Ind.Code § 35–34–1–4(a)(8). However, here he asserts a different argument than the staleness of the charges originally argued in his Motion to Dismiss. He argues here that he was not afforded adequate time to prepare a defense to the two new charges. He complains he was not informed of his rights or the nature of the charges filed against him because he received no initial hearing as required by Ind.Code § 35–33–7–4. Further he asserts no omnibus date was set as required by Ind.Code § 35–36–8–1. Hodges also argues the joinder statute, Ind.Code § 35–34–1–10, contemplates only the joining of previously filed charges, not those filed at the same time as the joinder motion. As these grounds were not raised at trial nor in Hodges' motion to dismiss and appear for the first time on appeal, they are therefore waived. *Cox v. State* (1986), Ind., 493 N.E.2d 151, 161; *Beland v. State* (1985), Ind., 476 N.E.2d 843, 845. If Hodges felt he needed additional time to face the new charges, he was under a duty to move for a continuance to preserve his rights. In fact, the State moved for a continuance because of the joinder motion, but the motion was denied. Further, Hodges has not alleged any prejudice resulting from the joinder.

■ Hodges argues the two counts in cause no. S–5219 were so vague as to the time of occurrence that they failed to state the offenses with sufficient certainty, as required by Ind.Code § 35–34–1–2(a)(5) and (6). Each count alleged the act occurred from August 1982 to September 1984.

Hodges claims that because the two informations are identical, he could not distinguish one count from the other. Hodges argues this type of charge denies his constitutional rights to be informed of the nature and cause of the accusations and to be assisted by counsel. Hodges asserts that because the time period was so broad, he was prevented from presenting certain defenses such as an alibi or an insanity defense. However, a similar lack of specificity as to time has been approved in *Merry v. State* (1975), 166 Ind.App. 199, 209–12, 335 N.E.2d 249, 256–57, *trans. denied.* *See also Hoehn v. State* (1984), Ind.App., 472 N.E.2d 926, 928.

■ If offenses are joined solely because they are of same or similar character, a defendant has an automatic right to have the counts be tried separately, and the court has no discretion to deny the severance motion. *Abner v. State* (1985), Ind., 479 N.E.2d 1254, 1261; *Hobson v. State* (1986), Ind.App., 495 N.E.2d 741, 743; Ind. Code § 35–34–1–11. The burden is on defendant to make a timely motion for severance. *Muse v. State* (1981), Ind., 419 N.E. 2d 1302, 1305. A defendant waives his right to have similar offenses tried separately where he fails to make timely motion for severance. *Id.* at 1305; Ind.Code §§ 35–34–1–9(a)(1), 35–34–1–12(a). In *Hobson,* the defendant waived his alleged error of denial of severance of two counts of child molestation which allegedly were joined solely because they were of the same or similar character, because he did not renew his motion for severance during trial. *Hobson,* 495 N.E.2d at 744. In the instant case, Hodges made a Motion to Dismiss the counts. He neither objected to the joinder, nor moved to sever the charges for trial, nor moved to continue the trial. Thus, we find no error here.

## II

■ Hodges argues the trial court erred in finding five-year-old T.S., the victim, competent as a witness. He asserts the State failed to overcome the statutory presumption of incompetency and did not show that T.S. understood she was under a

compulsion to tell the truth. Children less than ten years old may testify if "it appears that they understand the nature and obligation of an oath." Ind.Code Ann. § 34–1–14–5 (Burns 1986). It must be shown that the child knows the difference between telling the truth and telling a lie, and that the child understands he or she is under a compulsion to tell the truth at trial. *Jones v. State* (1984), Ind., 464 N.E.2d 1283, 1284. The determination of a child's competency lies within the trial judge's discretion since the trial judge has the opportunity to observe the child's intelligence, demeanor and maturity. *Peters v. State* (1984), Ind., 470 N.E.2d 708, 710. The court's determination is presumed valid and will be reversed only for a manifest abuse of discretion. *Id.* at 710; *Jones,* 464 N.E.2d at 1284.

■ Hodges concedes a showing that T.S. knew the difference between the truth and a lie, but argues there was no showing that she realized she was under a compulsion to tell the truth. The record clearly shows the requisite inquiries were made of T.S. to determine her ability to comprehend her obligation to testify truthfully. T.S. testified at a competency hearing that she didn't know what would happen if she didn't tell the truth and that the deputy prosecuting attorney told her to say she would tell the truth. When asked why she had to tell the truth, T.S. twice said she didn't know, and said she didn't know what an oath was. However, T.S. also said if she promised to tell the truth, she would tell the truth and not lie, and that she gets spanked and otherwise is punished for telling lies, but does not get punished for telling the truth. T.S. promised to tell the truth at trial. T.S.'s responses disclosed that she knew the difference between lying and telling the truth and understood she was to testify truthfully. Therefore, Hodges has failed to show the trial court abused its discretion by allowing T.S. to testify due to her tender age.

## III

Hodges claims the trial court erred in allowing the testimony of R.S. as the procedures set forth in Ind.Code § 35–37–4–4 were not followed and the evidence was without proper foundation, was not relevant, and was highly prejudicial. R.S., who was 12 years old at the time of trial, had been a neighbor of the Hodges. The State filed a motion for admission of evidence pursuant to Ind.Code § 35–37–4–4 which sought to allow evidence of Hodges' past sexual conduct with another minor, R.S., under the depraved sexual instinct rule. Ind.Code § 35–37–4–4, the rape shield statute, allows for the introduction of evidence of a witness' past sexual activity with a defendant and sets forth a mandatory procedure, which requires a written motion ten days prior to trial and an offer of proof. The State's motion specifically requested a hearing and order pursuant to Ind.Code § 35–37–4–4(c). R.S. was questioned outside the presence of the jury and the trial court made a determination to allow the testimony of R.S. at trial. Hodges objected that the procedures of Ind.Code § 35–37–4–4 were not strictly followed thus denying him due process. Hodges continued his objection when R.S. was called to the stand.

Hodges argues the State failed to strictly follow the required procedure of Ind.Code § 35–37–4–4. First he states the motion was filed only five days before trial, when the rule requires it be filed ten days prior to trial. Second, Hodges claims his counsel was prevented from questioning R.S. about her October 4, 1984, statement during a hearing to allow the questioning of the witness regarding the offer of proof because the State's objection to his questions was sustained. Finally, Hodges asserts the trial court failed to make an order stating what evidence may be introduced by the State and the nature of the questions to be permitted. When Hodges' counsel requested the specific order, the trial court stated it did not know what evidence the State intended to present. Thus, Hodges argues the motion should have been denied because the provisions of the rape shield statute were not strictly followed.

■ During the arguments on the motion, the State suggested the motion

was made as a precaution, and doubted whether such a motion was required since the evidence was to be offered under the depraved sexual instinct rule. The State now contends, and we agree, that the motion was unnecessary. Ind.Code § 35–37–4–4 is for the protection of sex crime victims, not offenders. The statute has no application when the State attempts to introduce evidence of a defendant's depraved sexual instinct. *Brackens v. State* (1985), Ind., 480 N.E.2d 536, 539; *Jarrett v. State* (1984), Ind., 465 N.E.2d 1097, 1098–99. As the State's motion and hearing thereon were unnecessary, no reversible error was committed.

▮▮▮▮ Hodges further claims the evidence was prejudicial, of no probative value in establishing a depraved sexual instinct, and further asserts there was no evidence of an intent to arouse or satisfy sexual desires as required by Ind.Code § 35–42–4–3(d). The evidence admitted under the depraved sexual instinct rule included testimony by R.S. that Hodges had once reached his hand up her shirt and touched her breast, and that on another occasion had tickled her and reached up her shirt to her breasts and down her shorts to "a little bit past my belly button". She testified that on another occasion Hodges said he would like to have sex with her if she were 5 or 6 years older. She also acknowledged she did not say her breasts were touched or Hodges' hand was in her pants in her initial statement to police. Acts used to show a depraved sexual instinct need not be identical to the crime for which a defendant is charged. It is sufficient if the same sexual instinct is involved. *Jarrett*, 465 N.E.2d at 1100. Here, the previous acts of Hodges were similar enough to the charged crimes to merit introduction under the depraved sexual instinct rule. Both involved a minor as a victim and were similar in time and proximity. There was no error in the introduction of this evidence.

## IV

Hodges argues the trial court erred in overruling his motion to strike the direct examination of T.S., the victim. He claims her lack of specificity as to the dates of the alleged acts, and her age and intellectual capacity, denied him the right to confront and cross-examine her. Further, T.S. said Hodges had had intercourse with her. However, Dr. Weller who examined her saw no evidence of trauma or intercourse. Hodges here argues that T.S.'s allegations were so devoid of detail as to make impossible any attempt on cross-examination to discredit them. Because T.S. could not specify the time, order, or location of the offenses, Hodges claims he was denied his constitutional right of confrontation through effective cross-examination.

▮▮▮▮ The right to confront witnesses includes the right to a full, adequate, and effective cross-examination. It is fundamental and essential to a fair trial. *Clark v. State* (1985), Ind., 480 N.E.2d 555, 559, citing *Lagenour v. State* (1978), 268 Ind. 441, 376 N.E.2d 475. Here, defense counsel conducted a thorough cross-examination. T.S. was questioned about the location, time and sequence of the molesting. She testified the incidents occurred at both of her residences in Dayton and Lafayette, Indiana, but could not specify the time or order of the offenses. Thus, the defense had a chance to exploit the vagueness and uncertainty of T.S.'s testimony. Hodges does not explain how his cross-examination would have been more effective had T.S. been definite as to the time, sequence, and locations of the molesting. Therefore, we cannot say that he was denied his right to full, adequate and effective cross-examination. T.S.'s uncertainty was more a question of credibility than one of admissibility.

## V

Hodges argues the court erred in admitting out-of-court statements made by T.S. to Judy Anderson and Elaine Stahl, over Hodges' hearsay objections. Judy Anderson, T.S.'s child psychologist, related T.S.'s version of the offenses as told to her over several sessions. Elaine Stahl, a caseworker with the Tippecanoe Child Protective Services, was called into T.S.'s case by the police. Stahl interviewed T.S. about

the offenses and made a tape recording. At trial Stahl was permitted to relate T.S.'s comments and the tape recording was admitted and played. Hodges claims the hearsay statements were inadmissible under *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.22d 482, since, on cross-examination, T.S. testified she did not remember talking to anyone about what Hodges had done to her.

■ The *Patterson* rule allows for the admission of prior statements where the asserter is a witness who is present and available for cross-examination regarding the prior statement. *Watkins v. State* (1983), Ind., 446 N.E.2d 949, 960. The statement is not admissible when the witness denies making the statement or has no recollection of it, because the witness is "unavailable" for cross-examination concerning the statement. *Id.* at 960. In *Watkins,* we noted that the trial court is to resolve questions concerning whether a particular witness has in fact denied making the statement or has asserted a loss of memory as to the statement. We indicated the trial court was not to look merely at isolated bits and pieces of testimony but rather was to base its judgment on the total testimony of the witness. *Holmes v. State* (1985), Ind., 480 N.E.2d 916, 920.

■ Hodges argues that because T.S. did not acknowledge her prior statements to Anderson and Stahl and she did not remember the taped statement, Hodges was unable to cross-examine T.S. as to the statements and thus the *Patterson* requirements were not met. Hodges' argument relies on T.S.'s cross-examination testimony in which T.S. stated she did not remember talking to anyone about her allegations. However, on direct examination, T.S. acknowledged telling Stahl about the offenses, although she claimed to remember only some of what she told Stahl. On redirect examination, T.S. acknowledged telling Anderson about the offense. Thus, the record contains acknowledgments by T.S. supporting the judge's finding.

## VI

Hodges challenges the admission of an incriminating statement he gave to the police, claiming the statement was the product of coercion. The State introduced, over objection, a tape recording and transcription of a statement made by Hodges to Detective David Payne. Hodges moved to suppress the evidence and a hearing was conducted out of the jury's presence. During the suppression hearing it was established that Hodges came to the Sheriff's Department, was advised of his rights, and gave a taped statement which was not incriminating. Detective Payne then asked Hodges to take a polygraph examination, which was given within the hour by Detective Pope. After the polygraph, Hodges was reminded of his rights and then gave a second, taped statement which was incriminating. Detective Payne testified that Hodges was always free to go, was never handcuffed, and never asked to stop the statement or to retain an attorney. Hodges testified he was never informed he could leave. Hodges also testified that he felt pressured to take the polygraph and that he indicated to the officers he did not want to take the polygraph. Hodges said Detective Pope pressured him into giving the second statement. The trial court admitted the evidence.

■ The admissibility of a custodial statement is controlled by determining, from the totality of the circumstances, whether or not it was made voluntarily. We review these questions on appeal as we do other sufficiency matters. We do not judge the credibility of witnesses nor reweigh the evidence. Rather, we determine whether there is substantial probative evidence to support the trial court's finding. *Lyons v. State* (1987), Ind., 506 N.E.2d 813, 816; *Creasy v. State* (1985), Ind.App., 477 N.E.2d 577. Hodges argues he was illegally held until he took the polygraph test and asserts he reasonably believed he was not free to leave. He asserts that despite the fact he was read his *Miranda* rights, the police failed to stop questioning him when he said he did not want to be questioned. However, Hodges was advised of his rights

and acknowledged that he both understood and waived those rights. Hodges voluntarily continued to talk with the officers and answer their questions. Also Hodges' allegations of coercion are contradicted by the State's evidence. No showing is made that the court's judgment was an abuse of discretion, or that the court's decision was not supported by sufficient evidence. The circumstances, as found by the trial court, demonstrate a fully informed and voluntary statement.

### VII

Hodges challenges the trial court's admission of a tape recording and transcription of a statement by Marsha Hodges, his wife, which was introduced during the testimony of Detective Payne. After the exhibits were introduced into evidence, Hodges moved to strike the exhibits and moved for a mistrial. Hodges claims that because Marsha Hodges had already testified to much of the substance of the statement, it was cumulative and therefore irrelevant. He further asserts the statement was prejudicial because it contained hearsay allegations regarding a rape complaint made against Hodges by his wife.

An evidentiary ruling is reviewed only for an abuse of discretion. *Wisehart v. State* (1985), Ind., 484 N.E.2d 949, 957, *cert. denied* (1986) 476 U.S. 1189, 106 S.Ct. 2929, 91 L.Ed.2d 556. Evidence which is merely cumulative is not grounds for reversal. *Watkins v. State* (1984), Ind., 460 N.E.2d 514, 515. This court will reverse a judgment only when an error causes prejudice to the defendant. *Wisehart*, 484 N.E.2d at 957; *Watkins*, 460 N.E.2d at 515. Marsha Hodges' statement detailed some of T.S.'s complaints, Hodges' reactions to the complaints, and corroborated Marsha Hodges' prior testimony. The statement was relevant and Hodges has failed to show any prejudice resulting from the its admission. Thus, Hodges' objection to the admission of the evidence and motion to strike were properly overruled.

Hodges moved for a mistrial on the basis of the following excerpt from Marsha Hodges' statement:

A. Was there a time that you reported your husband to a Dayton Town marshall because he raped you?

A. Yes.

Q. When was that?

A. In December about three weeks from before Christmas.

Q. And that was 1983?

A. Yes.

Hodges argued at trial that the rape comment was irrelevant and placed him in grave peril. The State responded that Hodges had the opportunity to review the transcript and could then have objected to the rape comment, but chose to lodge only a broad relevancy objection. The court denied the mistrial.

In determining whether an error in the introduction of evidence warrants a reversal, this court must assess the probable impact of the challenged evidence on the jury. *Williams v. State* (1981), Ind., 426 N.E.2d 662, 671. The reference was brief, buried in Marsha Hodges' relation of T.S.'s complaints. The rape allegation was not explored during Marsha Hodges' prior direct or cross-examination. Also, the evidence of Hodges' guilt was overwhelming, as established by the testimony of Marsha Hodges, T.S., and Hodges' own statement. In his statement he admitted to several instances of molestation of T.S. We also note that, at his request, references to his relationship with his wife were not read to the jury. We agree with Hodges that the evidence should not have been admitted into evidence. However, in view of the unemphasized nature of the comment and the other evidence tending to show Hodges' guilt, we find there is no substantial likelihood that the evidence contributed to the verdict, and we deem it to be have been harmless. *See Mulligan v. State* (1986), Ind., 487 N.E.2d 1309, 1313; *Maiden v. State* (1985), Ind., 477 N.E.2d 275, 278.

### VIII

Hodges claims the trial court erred in refusing to give his tendered final instruction no. 2. However, Hodges failed to sign the instruction as tendered, contravening

Ind.Code § 35–37–2–2 as effective at his trial, which occurred on March 6–8, 1985. The amendment to Ind.Code § 35–37–2–2(6)(C) allowing a signed cover sheet to suffice was not approved by the legislature until April 3, 1985. The law existing at the time of Hodges' trial required strict observance of the signature requirement, under penalty of appellate waiver. *Phillips v. State* (1986), Ind., 496 N.E.2d 87, 89–90; *Harding v. State* (1984), Ind., 457 N.E.2d 1098, 1101, *cert. denied*, (1986), 475 U.S. 1024, 106 S.Ct. 1218, 89 L.Ed.2d 329. Thus, Hodges has waived any claim of error.

■ Furthermore, even had the instruction been properly signed, the trial court could have properly refused it. Tendered final instruction no. 2 read:

> Any evidence received in this case relative to the Defendant touching or fondling R.S. is to be considered by you only on the issue of the credibility of T.S.

In reviewing an issue concerning the refusal of a tendered instruction, this court considers whether the instruction is a correct statement of the law, whether there is evidence to support the giving of the instruction, and whether the substance of the tendered instruction is covered by other instructions which were given. *Smith v. State* (1984), Ind., 468 N.E.2d 512, 517; *Richey v. State* (1981), Ind., 426 N.E.2d 389, 395.

■ Hodges asserts the purpose of R.S.'s testimony, offered as evidence of Hodges' depraved sexual instinct, was limited to bolstering the credibility of T.S. and was inadmissible to be used to directly establish his guilt, citing *Grey v. State* (1980), 273 Ind. 439, 404 N.E.32d 1348. The State counters that Hodges' instruction was properly refused as it is not an accurate statement of the law and would only have confused the jury. In explanation of the basis for the depraved sexual instinct rule, this court stated:

> The basis for this exception is that in prosecutions for depraved acts "... the prosecuting witness is not likely to be believed, since the evidence 'standing alone and entirely unconnected with any-

thing which led to or brought it about, would appear ... unnatural or improbable in itself.'" *Pieper v. State*, (1975) 262 Ind. 580, 585, 321 N.E.2d 196, 199, quoting *State v. Robbins*, (1943) 221 Ind. 125, 46 N.E.2d 691, 695. Thus, the evidence lends credence to the testimony of the prosecution that might otherwise be disbelieved. *Lamar v. State*, (1964) 245 Ind. 104, 195 N.E.2d 98.

*Grey*, 273 Ind. at 446, 404 N.E.2d at 1352. Thus, according to the depraved sexual instinct rule, R.S.'s testimony should work to remove from T.S.'s testimony a natural incredibility and improbability. For this to occur, the jury must give some credence to R.S.'s testimony. The tendered instruction suggests the jury was not to consider R.S.'s testimony as substantive evidence of her allegations about Hodges. However, the depraved sexual instinct rule is defeated if the jury does not weigh the testimony of R.S. It is not error to refuse an instruction which does not fully and accurately state the law and would tend to mislead or confuse the jury. *Harding*, 457 N.E.2d at 1102. As this instruction may have confused the jury, no error was committed in refusing it.

## IX

■ Hodges claims the trial court erred in giving final instruction no. 13 over his objection that it was a prejudicial and incorrect statement of the law. The instruction read:

> While a defendant is presumed in law to be innocent of a crime until the contrary is established by the evidence to that degree of certainty that you as jurors are convinced of his guilt beyond a reasonable doubt, the rule of law which presumes the defendant to be innocent and requires the State to establish beyond a reasonable doubt every material fact averred in the indictment is not intended to shield those who are actually guilty from just and merited punishment; rather, it a humane provision of law which is intended for the protection of the innocent, and to guard, as far as human agencies can, against the convic-

tion of those who are innocent and unjustly accused of crime.

Hodges claims this instruction was confusing and misstated the law in that it permitted the jury to disregard the presumption of innocence. He asserts its premise is that the presumption of innocence and the reasonable doubt standard apply differently to the guilty than to the innocent, which should not be considered by the jury until an actual verdict is reached because of the presumption of innocence. However, our reading of the challenged instruction does not permit a juror to disregard the presumption of innocence if he subjectively believes the defendant is guilty. It merely emphasizes that the rule is only a presumption of legal construction, one that can be rebutted.

Decisions concerning jury instructions lie within the discretion of the trial court. *Travis v. State* (1986), Ind., 488 N.E.2d 342, 345. This court will not reverse unless the error is such that, taken as a whole, the charge to the jury misstates the law or otherwise misleads the jury. *Id.* at 345. Instructions are to be considered with reference to each other and as an entirety, and error in a particular instruction will not justify a reversal unless the error is of such a nature that the whole charge of which it forms a part misleads the jury as to the law of the case. *Daniels v. State* (1980), 274 Ind. 29, 33, 408 N.E.2d 1244, 1246.

Here, other instructions given by the court fully stated the presumption of innocence and the State's burden. Final instruction no. 12 read:

In this case, you must presume that the Defendant is innocent, and this presumption of innocence accompanies the Defendant step by step through the trial until the State has proven by the evidence, that the Defendant is guilty beyond a reasonable doubt.

Since the Defendant is presumed to be innocent, he is not required to prove or explain anything. The real burden of proving guilt beyond a reasonable doubt rests throughout the entire trial on the State.

If the State failed to prove beyond a reasonable doubt every essential element of the crimes charged, or if it failed to prove beyond a reasonable doubt every essential element of any lesser crimes included in the crimes charged, or if there remains in your mind a reasonable doubt about the Defendant's guilt, you must find him not guilty.

Final instruction no. 15 read:

The term, "reasonable doubt" as used in connection with the degree of proof required by law to convict a person charged with commission of a criminal offense, means an actual and substantial doubt that arises in the mind after a fair and impartial consideration and weighing of all the evidence and circumstances in the case. Not every doubt is a reasonable one. In order that there can be such doubt, it must be based upon some reason arising out of the evidence or lack of evidence concerning the (essential) or (necessary) elements of the case. You may not act upon a mere whim, speculation, guess, or surmise and you may not convict upon a mere possibility of guilt. Before you can find the Defendant guilty as charged, the evidence in the case must produce in your own minds such a firm belief of guilt that you would be freely willing to act upon that belief in any matter of the highest concern and importance to your own dearest interest.

This rule on reasonable doubt applies to each of you individually; and it is your personal duty to refuse to convict as long as you have a reasonable doubt as to the Defendants guilt as charged; likewise, it is your personal duty to vote for conviction as long as you are convinced beyond a reasonable doubt of the Defendant's guilt as charged.

Final instruction no. 17 read:

As jurors, you are the sole judges of the evidence and the credibility of the witnesses who testify. In determining the weight or credit to be given to the testimony of a witness or an exhibit introduced, you may take the following matters in to consideration.

You may consider the opportunity and the capacity of a witness for observing or recalling the matters about which he or she has testified and the conduct and demeanor of such witness while testifying. You may consider the prejudice of a witness, if any be shown, and his or her interest or lack of interest in the results of the trial. You may consider the probability or improbability of the testimony given, in view of other evidence, facts or circumstances proven to your satisfaction during the trial. Also, you may consider whether or not the testimony of a witness has been corroborated or contradicted by other evidence introduced in the trial that you have found to be credible. You should weigh the evidence, and give credit to the testimony by considering it and relating it to your own experiences and observations in the ordinary and customary affairs of your lives.

If you find that there are conflicts in the evidence, you should first attempt to reconcile these conflicts, if you can, on the theory that each witness has testified truthfully. However, if such conflicts in the evidence cannot be reconciled, then you, as jurors, are the exclusive judges of the credibility of the witnesses, and the weight you will give to his or her testimony; and, it is within your province to determine whom you will believe and whom you will disbelieve.

These instructions read as a whole show that the jury was properly and fully instructed on the presumption of innocence and the State's burden. Therefore,, there was no error in giving final instruction no. 13.

## X

■ Hodges claims the trial court erred in giving final instructions nos. 20 and 22 over his objection that they were confusing as to the proper burden of proof and stated, in part, to the jury that "you are now confronted with the duty of pronouncing the guilt or innocence of the Defendant." The two instructions are:

Final Instruction No. 20

Members of the jury, evidence has been introduced in this case to assist you in determining the facts and I have endeavored to advise you as to the applicable law. You are now confronted with the duty of pronouncing the guilt or innocence of the defendant. I submit the case to you with confidence that you will discharge this duty, without being moved by an undue demand for conviction by the State or swayed from the performance of your duty by any undue appeal to your sympathy. Your duty demands that you be equally just to the Defendant and the State. You should bear in mind that the liberty or property of an accused should not be taken from him by careless or inconsiderate judgment, but, if after a careful consideration of the evidence and law, you are satisfied as to the Defendant's guilt beyond a reasonable doubt, you should return your verdict accordingly. As citizens, charged with the duty of assisting the Courts in the administration of justice, you should put aside any consideration of public approval or disapproval, carefully considering the evidence and the law, and return into Court such verdict as you believe to be just.

Final Instruction No. 22

Law of the State of Indiana provides that you as jurors are to determine only the question of guilt or innocence of the defendant. The matter of assessing a penalty is left solely to the court. Therefore, the possible forms of your verdict are as follows: "We, the jury find the defendant, _____, guilty of the offense of _____;

OR

"We, the jury find the defendant, _____, not guilty of the offense of _____."

Hodges asserts these instructions were confusing to the jury and misstated the law. He claims that by instructing the jury their duty was to find whether the Defendant was guilty or innocent, the court placed a burden of proof on Hodges which the law does not require. The jury was only to determine whether the State

had met its burden by proving Hodges guilty beyond a reasonable doubt. Our reading of the challenged instructions does not show a conflict with the jury's function. Instruction no. 20 states that the jury must be "satisfied as to the defendant's guilt beyond a reasonable doubt." Neither instruction places a burden on Hodges to prove his innocence. Final instructions nos. 12, 13, 15, 16, and 17 fully explain the presumption of innocence and the State's burden. Taken as a whole, the charge accurately advised the jury of its responsibility and the burdens of the parties.

## XI

 Hodges claims the trial court erred by admitting certified records of his prior convictions in State's Exhibit's 10, 11, 12, and 13 during the habitual offender phase because they were without relevance and proper foundation. Hodges acknowledges the rule that official records properly certified by the custodian of those records are admissible without live witnesses and that a similar rule applies to D.O.C. records. *See Thomas v. State* (1984), Ind., 471 N.E. 2d 677, 680; *Connell v. State* (1984), Ind., 470 N.E.2d 701, 707; Ind.R.Tr.P. 44; Ind. Code § 34–1–17–7. Hodges also concedes that the challenged documents were fully and properly certified. He now asks this court to reconsider and reverse its earlier decisions and to reverse his convictions. This we will not do.

## XII

 Hodges claims the trial court erred during the habitual phase of the trial by refusing to accept the jury's first verdict and requiring them to return to deliberate further without proper verdict forms, and by denying his Motion for Mistrial based on those acts. During the habitual phase of the trial, after deliberation the jury returned a verdict which struck the printed words, "is a habitual criminal", and substituted the phrase, "is guilty of the above felonies." The alterations were made by hand. On receipt of this verdict the court informed the jury their verdict was defective and returned them to the jury room for correction. Hodges objected that the ver-

dict should stand, and in the alternative moved for a mistrial, which the trial court overruled. The jury returned with its corrected verdict which struck the handwritten phrase and recited the original language finding Hodges to be "a habitual criminal." Hodges again moved for a mistrial on the additional ground that no alternative verdict form of not guilty was sent to the jury room when the jury returned to correct the verdict. The trial court overruled the motion. The verdict form read:

We, the jury, having heretofore found that the defendant Thomas C. Hodges, did commit the crime or crimes of child molesting in Cause # S–5097 contrary to Indiana Code 35–42–4–3(b) and/or 35–42–3(a). Do now further find as follows:

That Thomas C. Hodges did have prior convictions of two or more of the following unrelated felonies:

Please check (X) if guilty (o) if not guilty

_____1. That on or about the 27th day of December 1974 defendant was convicted in Montgomery Circuit Court, Montgomery County, Indiana of a felony, namely, the crime of second degree burglary.

_____2. That on or about the 16th day of September, 1977 that the defendant was convicted in the Montgomery County Circuit Court in the County of Montgomery, State of Indiana of the crime of second degree burglary, a felony.

It is therefore the verdict of the jury that the defendant Thomas C. Hodges is a habitual criminal.

Hodges first argues that since the jury in criminal cases determines the law and the facts, it was within the jury's province to reject the habitual charge on either factual or legal grounds. He asserts that here, in judging the law, the jury found the law should not apply to him. We do not reach this issue. A party may not claim as error the giving of an instruction unless he objects thereto before the jury retires to consider its verdict. Trial Rule 51(C) as adopted in Criminal Rule 8(H). Hodges did not timely object to the instruction contain-

ing the habitual offender verdict form. Once instructions are finalized, the trial court may properly seek a jury verdict free from inconsistencies or defects.

The trial court felt the original verdict was defective. If a jury's verdict is defective in substance it is proper for the trial court to refuse to accept the verdict and to send the jury back for further deliberations to have the verdict amended before the jury members separate. *Patton v. State* (1971), 257 Ind. 421, 424, 275 N.E.2d 794, 796, *cert. denied* (1972), 405 U.S. 1069, 92 S.Ct. 1515, 31 L.Ed.2d 800. The trial court did not order the jury to change the verdict nor in any way indicated which way it felt the jury should decide. Thus, the judge did not act improperly in sending the verdict back to the jury for correction.

Hodges argues alternatively that this verdict, because of the inconsistency the trial court perceived, should not have been allowed to support the judgment of guilt, citing *Illinois Central Gulf R.R. Co. v. Parks* (1979), 181 Ind.App. 148, 390 N.E. 2d 1073, *trans. denied.* However, as stated in *Illinois Central Gulf R.R. Co.:*

> Under the law, a verdict may be had and may be found not to support a judgment if it is legally or logically inconsistent, contradictory or repugnant, 28 I.L.E. *Trials* § 316 (1960); 89 C.J.S. *Trial* §§ 496 and 500 (1955); *Indianapolis Newspapers, Inc. v. Fields,* (1970) 254 Ind. 219, 259 N.E.2d 651, but the court indulges every reasonable presumption in favor of the legality of jury verdicts. *Indianapolis Newspapers, Inc., supra; Central Union Telephone Co. v. Fehring,* (1896) 146 Ind. 189, 45 N.E. 64.

*Illinois Central Gulf R.R. Co.,* 181 Ind. App. at 149, 390 N.E.2d at 1074. Here, the verdict was not contradictory or inconsistent to the facts, nor repugnant. The trial court found it to be improper as to form. He committed no error in doing so.

Hodges also charges the trial court erred in sending the jury to further deliberate without providing a verdict form for a verdict of innocent, but with only a guilty verdict form. The record shows that prior to sending the jury back to deliberate, the trial court and both counsel discussed whether new verdict forms should also be sent with the jury. Defense counsel indicated he would object to new verdict forms, one of which said the jury finds the defendant not guilty of habitual criminal. Thus, Hodges cannot now be heard to complain about the lack of a new verdict form.

Concerning the imposition of the habitual offender enhancement, the State notes the record is ambiguous as to which cause number is affected. The minute entries for cause no. S–5097 state that the sentences will be enhanced by thirty (30) years. However, the transcript of sentencing shows the court enhanced the sentences in cause no. S–5219. In either case, no specific count is enhanced, only a general assignment is made. The enhancement should be to a particular sentence. Thus, this cause is remanded for correction of the sentence to reflect proper sentencing procedure. *See Gibbens v. State* (1982), Ind., 434 N.E.2d 82, 86; *Johnson v. State* (1982), 432 N.E.2d 1358, 1362.

The trial court is in all other respects affirmed.

SHEPARD, C.J., and GIVAN and DICKSON, JJ., concur.

DeBRULER, J., concurs and dissents with separate opinion.

DeBRULER, Justice, concurring and dissenting.

Two counts in cause no. S–5219 were identical. The conduct alleged in both is the same. The conduct alleged in both is said to have occurred within the same time frame. The victim is the same. The substantive criminal statute is the same in both. I view their identity as a basis for dismissal of one of them as a matter of law.

In *Merry v. State* (1975), 166 Ind.App. 199, 335 N.E.2d 249, the prosecution charged in a single count that the defendant had on numerous occasions between December, 1970, and September 1973, had sexual intercourse with a minor daughter. The court accepted the pleading as correct.

In *Hoehn v. State* (1984), Ind.App., 472 N.E.2d 926, the court dealt with a single charge that alleged that the offense took place in May or June of 1983. Here we do not deal with a single count, but with dual counts of identical form.

I would reverse one of these two convictions under S–5219, and remand for dismissal of the count upon which such conviction was based. Otherwise I concur.