Rosalio **HERNANDEZ**, Appellant,

v.

**STATE of Indiana, Appellee.**

No. 18S00–8910–CR–752.

Supreme Court of Indiana.

Dec. 7, 1990.

Jack Quirk, Muncie, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Judge.

A jury trial resulted in the conviction of appellant of Murder. He was sentenced to a term of sixty (60) years.

The facts are: Early in the morning on November 12, 1988, Roy Washington, the victim, was playing pool on Highland Street in Muncie, Indiana. At approximately 12:30 a.m., the victim and a friend left the establishment, and as the victim was approaching a parked car, he was shot by a person wearing a white-hooded sweat shirt. After the victim fell, the man in the white-hooded sweat shirt shot him several more times and ran away. The victim died as a result of the gunshot wounds.

Appellant was identified as the man in the white-hooded sweat shirt. Several witnesses had observed a man wearing a white-hooded sweat shirt sitting on steps across from the pool hall earlier that night. Testimony was presented that appellant previously had threatened to kill the victim and on a previous occasion had run toward the victim with a gun in his hand.

During the trial, appellant presented alibi evidence to show he was at an apartment with a friend watching a movie on television. In rebuttal, the State presented evidence to show that the movie appellant claimed to have watched in fact was not shown on the evening of the murder.

■ Appellant contends the conviction should be reversed because the State used information as evidence to discredit an alibi witness when the information was inaccurate and the State knew of its inaccuracy.

The standard for prosecutorial misconduct is set out in *Maldonado v. State* (1976), 265 Ind. 492, 498–99, 355 N.E.2d 843, 848, as follows:

"1. The Court first determines that the prosecutor in fact engaged in misconduct. This determination is made by reference to the case law and the disciplinary rules of the Code of Professional Responsibility as adopted in this State. (Citation omitted.)

2. The Court then considers whether the misconduct, under all the circumstances, 'placed [the defendant] in a position of grave peril to which he should not have been subjected.' (Citations omitted.)

3. Whether the misconduct results in subjecting the defendant to 'grave peril' is determined by the probable persuasive effect of the misconduct on the jury's decision, not by the degree of impropriety of the conduct. (Citation omitted.)

4. Even if an isolated instance of misconduct does not establish grave peril, if repeated instances evidence a deliberate attempt to improperly prejudice the defendant, a reversal may still result." (Citations omitted.)

Appellant contends the State acted improperly in presenting State's Exhibits Nos. 21 and 22, arguing these exhibits were inaccurate. These exhibits were used to rebut appellant's alibi testimony.

State's Exhibit 22 is merely a copy of State's Exhibit 21. During trial, appellant presented evidence to establish through various witnesses an alibi that he was watching television at his neighbor's apart-

ment on the night of the murder. Testimony was presented that one of the movies watched on the night of the murder was "Bachelor Party." On rebuttal, the State called Rodney Richey who prepares the Muncie Star television listings.

State's Exhibit 21, the television listing for November 11, 1988, was admitted into evidence through Richey. He testified he had prepared the listing. He further testified that this listing did not include the movie "Bachelor Party." During this time, appellant objected to this exhibit being admitted into evidence. Defense counsel asked Richey preliminary questions regarding the accuracy of the list and the witness testified that the listing did not necessarily indicate what actually was shown at any particular time. He testified the reasons for this were the reservation of rights by networks to change things at the last moment and the possibility of human error. He also testified that the listing was not intentionally inaccurate.

During the hearing on appellant's motion to correct error, Richey gave similar testimony and further testified that he informed the prosecutor of possible inaccuracy problems but was informed by the prosecutor that he did not believe it was a problem. However, Richey testified that the potential inaccuracy problems had been pointed out to the jury.

From the record, it is clear that the testimony of Richey did not establish that the newspaper television listing was inaccurate but instead showed the listing was as accurate as they could make it. His testimony further established that he could not guarantee that which was stated in the listing in fact eventually was shown on television.

We hardly can say from the record presented that the prosecutor knowingly used false evidence. Therefore we cannot say that the prosecutor's conduct in the instant case amounted to prosecutorial misconduct under the standard established by *Maldonado.*

The jury was presented with the possible inaccuracy problems with these exhibits and it was for the jury to assess the credibility and weight of this evidence. *See*

*Mott v. State* (1989), Ind., 547 N.E.2d 261. We find no error.

■ Appellant contends the trial court erred in admitting State's Exhibits Nos. 21 and 22 over his hearsay objections. Appellant contends he was denied his right to confront the witnesses against him.

Appellant argues that Richey's testimony destroyed his alibi testimony by saying the movie "Bachelor Party" did not appear on the night of the murder.

This Court in *Connell v. State* (1984), Ind., 470 N.E.2d 701 addressed the issue presented in the instant case. In *Connell,* the defendant attempted to establish an alibi by testifying that he was at the residence of Ms. Beneford at the time of the crime. Beneford testified that she remembered the time because there were cartoons on the television. To rebut this testimony, the State offered an exhibit which listed the television programs for the day the crime occurred. The schedule in question was contained in an issue of a newspaper, the Muncie Star.

In deciding *Connell,* Justice DeBruler writing for this Court stated:

"There is good and sound cause upon which to predicate an exception to the hearsay rule to permit the impeachment use of a television schedule to persuade a trier of fact what program was or was not actually broadcast. First: the viewing of television programs is a most common experience, yet there is a superficial simplicity to the process of disproving a particular broadcast by objective and unbiased proof. Second: the television listing is publicly announced and widely disseminated on a daily or weekly basis. Third: there is the widest of successful public reliance on the accuracy of listings. Fourth: their accuracy is dictated by the business interest of newspapers and television stations. Fifth: they are not intended to create evidence for court. Sixth: they are readily available and inexpensive.

The argument against the exception would be that the listings are periodically changed and are inaccurate. In our

judgment this factor is no greater than is present upon consideration of market reports published in newspapers, business entries, and public records.

We now hold that the law of evidence reflect an exception to the hearsay rule warranting the introduction of television listings and schedules published in newspapers and periodicals on a regular basis and intended to be relied upon by the public and shown to the satisfaction of the court to be authentic." *Id.* at 706–07.

We find the reasoning in *Connell* applicable in the instant case. Richey testified as to the accuracy of the exhibits as well as the inaccuracy. This evidence was presented to the jury. We cannot say from the record that the television listing was unreliable. In the instant case, counsel was able to cross-examine the witness concerning the reliability of the exhibit. We fail to find that appellant was denied his confrontation rights. We find no error.

◼ Appellant again asserts prosecutorial misconduct on the part of the prosecutor in using false evidence. Appellant contends Officer McGunegill and Officer Irelan provided false testimony with regard to why certain tests were not submitted for analysis.

Officer McGunegill testified regarding neutron activation tests performed on appellant and his brother. In addition, he testified that the tests performed were not sent to the F.B.I. for analysis because the gun was not recovered, and without the gun, the F.B.I. would not run the test. He testified that he did not perform a trace metal test upon appellant. Officer Irelan testified that he performed the neutron activation test upon appellant's brother but the tests were not sent to the F.B.I. because they did not have the gun or cartridge. He did admit that on some occasions the F.B.I. would take the analysis without the gun or cartridge. He stated that a trace metal test was not performed on appellant on the date of the crime because the chemicals necessary for conducting such a test were not on hand.

In his defense, appellant called Steve Schlegel, who performed the neutron acti-

vation test upon appellant at approximately 4:30 a.m. on November 12, 1988. He testified that the F.B.I. would like the tests performed within six hours of the shooting but given the circumstances would accept the testing as much as twelve hours after the shooting. Appellant also called Jack Stonebraker, the Delaware County coroner and chief criminal investigator in the prosecutor's office, who testified that the F.B.I. standards did include a three-hour time limit for the neutron test but indicated the Alcohol, Tobacco and Firearms Agency would process the test up to twelve hours after the shooting. He testified that the neutron activation test was not a conclusive determination as to whether a person had fired a firearm and explained the trace metal tests and indicated that time was important in administering the tests. In addition, he indicated that he did not have a problem in obtaining the necessary supplies for conducting the tests.

We fail to find support from the record showing prosecutorial misconduct under the *Maldonado* standard. Nowhere does the record support appellant's position that false testimony was given by Officers McGunegill and Irelan. The record only reveals a conflict in the evidence presented. Appellant has failed to meet his burden in establishing misconduct. *See Whittle v. State* (1989), Ind., 542 N.E.2d 981.

Appellant raises then waives error in admitting State's Exhibit No. 8, a diagram of the crime scene. Therefore, we need not address this issue.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.